In re CONFECTIONS BY
SANDRA, INC., Debtor.

Appeal of KATZ, HOYT
SEIGEL & KAPOR.

BAP No. CC 87–1378 MoJV.
Bankruptcy No. LA 80–13464 CA.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 17, 1987.

Decided Nov. 2, 1987.

Benjamin S. Seigel, Katz, Hoyt, Seigel & Kapor, Los Angeles, Cal., for appellant.

No brief filed for appellee.

Before MOOREMAN, JONES and VOLINN, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

By this appeal the appellant seeks to set aside the trial court's order which limited the appellant's allowance of fees and costs to $8,694.88. The appeal stems from an order which was contrary to a previously entered order authorizing the employment of the appellant for the specific purpose of pursuing a certain claim on behalf of the Trustee. The previously entered order had set the appellant's compensation at "the greater of either fees computed upon the then normal and specified hourly rates charged, or on a contingency fee basis."

## FACTS

In November of 1980, the debtor's business premises suffered damage from a fire which had occurred in an adjacent building. One month later, the debtor filed a Chapter 11 petition and retained the appellant to institute an adversary action for recovery of damages sustained by reason of the fire. However, due to the lack of funds to finance a plan of reorganization, the case was converted to Chapter 7 in October 1981. A Chapter 7 Trustee was appointed and the only assets of the estate, besides the subject claim, totaled approximately $1,600. The debtor was without funds to pay the appellant to proceed with the case. However, the appellant agreed to prosecute the action upon the terms that it would be compensated by the greater of fees based upon its hourly rates charged, or, fees based upon a percentage of the recovery.

Apparently, there was a likelihood that no recovery would be obtained and no other bankruptcy attorney in the community could be obtained by the Trustee to take the case. The Trustee applied to the Bankruptcy Court for authority to employ the appellant as Special Counsel upon specific terms and conditions.

On May 10, 1982, Judge Moriarty entered an Order authorizing the employment of the appellant "on the terms and conditions set forth in the Application to represent him in the matters mentioned in the Application." E.R. at 15. The Trustee's Application provided for the following payment terms:

> [s]aid attorneys shall be reimbursed as follows: The greater of their normal hourly rate of $150.00 per hour for partners and $100.00 per hour for associates, plus costs and expenses, or 25% of any recovery received prior to trial and 33⅓% of any recovery received within 30 days from the date first set for trial or thereafter, plus all costs and expenses to be paid by Trustee. Said fees shall be contingent upon the recovery in this lawsuit and should there be no recovery in the subject lawsuit, said attorney's fees shall be on a pro rata basis with all other administrative claims.

E.R. at 17. The appellant also states that it agreed to waive its unsecured claim for $38,974.64 then due for services rendered to the debtor and to the debtor-in-possession.

The appellant then proceeded to prosecute the action. The appellant claims that many aspects of the case were very difficult and "bitterly opposed by the defendants" and certain rulings in the underlying case were appealed. The appellant also states that all motions and appeals were decided in favor of the debtor.

In December 1984, the case was settled, with court approval, for $50,000.00. The appellant eventually filed an application for an order authorizing the Trustee to pay the

appellant a total of $23,629.42 ($22,035.00 for fees of 205.5 hours and $1,594.42 for expenses). This amount represents the calculated hourly rate set forth in the appellant's application for fees submitted to the trial court. The amount the appellant would have received on the straight contingency basis was $16,666.67 (33⅓% of the recovery) plus costs of $1,594.42.

However, the Bankruptcy Court authorized the payment of only $8,694.88 to the appellant.[1] The appellant then brought a motion for reconsideration of the allowance and for a rehearing of its application fees. The Bankruptcy Court denied the motion and stated in its Order:

[a]t the hearing on February 23, 1987, I stated to those interested parties present that they should know that the Chapter 7 bankruptcy case was administered for the benefit of those that were not administrative creditors, namely, general unsecured creditors. Allowances were made accordingly.

E.R. at 54. The appellant filed a timely Notice of Appeal.[2] Because of the nature of the appeal, there are no opposing Briefs and the facts are substantiated by the record.

### ISSUE

Whether the trial court abused its discretion by allowing only $8,694.88 in attorney's fees and costs to the debtor's attorney.

### DISCUSSION

■ The appellant contends, that because the Bankruptcy Judge had specifically authorized the employment and terms and conditions of compensation, it was an abuse of discretion to award fees differing from the fees so fixed without a specific finding of "unanticipated developments" as set forth in Section 328(a) of the Bankruptcy Code. Section 328(a) provides as follows:

The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (1982). This section "anticipates that the terms of the fee arrangement will be *established* prior to the rendition of professional services." *In re Benassi*, 72 B.R. 44, 47 (D.Minn.1987) (emphasis added). The only limitation is the language which permits the court to award fees at variance with the terms of its prior order when they "prove to have been improvident in light of developments unanticipated" at the time the approval was given. *Id.*

In the instant case, the trial court did not make any specific finding that the originally approved fee arrangement was "improvident in light of developments unanticipated." Further, it does not appear from the record that any such unanticipated developments existed or were known. At the time the fee arrangement was approved by the Bankruptcy Judge, the estate had virtually no assets other than the claim pursued by the appellant. There were no indications as to the value of the claim. Indeed, the parties involved were satisfied with the results obtained considering the difficulty of proving the claim since many of the records had been destroyed or lost in the fire. R.T. at 1–2. Thus, there appears to

---

1. The authorization for payment of fees was brought before Judge Ashland. The $8,694.88 authorized for payment was calculated by reducing *all* attorney's fees and accountant's fees by approximately 63%, thereby allowing for more funds to be provided the unsecured credi-

tors of the estate. Appellant's Brief at pg. 14 nt. 4.

2. The $50,000 is being held by the Trustee and thus the appeal is not moot.

be no basis for modifying the approved fee arrangement on the basis of unanticipated developments.

The trial court's adjustment of the prior order was based upon principles of conservation of the estate and economy of administration in order to obtain relief for creditors. In the trial court's order denying the appellant's motion for reconsideration the court stated, "the Chapter 7 bankruptcy case was administered for the benefit of those that were not administrative creditors, namely general unsecured creditors. Allowances were made accordingly." E.R. at 54. However, the notion of economy of administration was changed by the enactment of Sections 328 and 330. *E.g. In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985) (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 330 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6386); *In re Powerline Oil Co.*, 71 B.R. 767, 770 (9th Cir. BAP 1986); *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 895 (1st Cir. 1985). The basis for abandoning the old notions of economy in the area of fixing fees was that it discouraged qualified practitioners from entering the bankruptcy practice. *Id.* Thus, the estates were "illserved" by less qualified specialists.

The record supports the conclusion that, absent the approved fee arrangement, this case presented a substantial reimbursement risk to counsel. The evidence before the appointing Judge was that the Trustee could get no other attorney in the community to take the case and that the case involved difficult obstacles because many of the debtor's records had been destroyed or lost in the fire. Also, it is undisputed that all parties were satisfied with the results obtained from the court approved settlement. Without the approved fee arrangement, it is doubtful that the appellant would have agreed to take the case.

The appellant argues that the Bankruptcy Court did not have discretion to modify the previously approved fee arrangement without the specific finding of some unanticipated development as set forth in the specific language of the statute. In the case of *In re Benassi*, 72 B.R. at 47, the United States District Court of Minnesota reversed the bankruptcy court's modification of a previously approved contingency fee arrangement. The court stated, " '[t]o deny the fee now because it exceeds time charges and looks high *in hindsight* would penalize counsel for a job well done and would tell counsel and all other attorneys that they should think twice before again working for' persons or businesses in bankruptcy proceedings." *Id.* at 49 (citing *Boston and Maine Corp., supra* 778 F.2d at 895) (emphasis in original).

The appellant also argues that the bankruptcy court should have granted the fees calculated on an hourly basis pursuant to the fee arrangement, in that this amount was higher than the percentage fee. At a minimum, the appellant is entitled to the contingency fee amount in that it was clearly an *established* amount. *In re Benassi*, 72 B.R. at 49; *see also In re Warrior Drilling & Engineering Co.*, 18 B.R. 684, 693 (N.D.Ala.1981). The only limitation was the risk of not prevailing on the claim.

Under the percentage fee calculation the appellant would in no event receive more than the 33⅓% of the recovery. Thus, the limit was established by the order. There is no evidence that the trial court's prior approval of this contingency fee arrangement was conditional in any respect. Further, there is no evidence that the contingent fee terms proved to have been improvident by reason of subsequent developments not capable of being anticipated at the time of the May 10, 1982 order fixing the appellant's compensation.

As to the hourly rate calculation, the only terms set in the May 10th order were with regard to the appellant's hourly rate charged. Indeed it was possible that the appellant's hourly rate calculation would be more than the amount eventually recovered. Thus, it is implicit in the May 10th order that the hourly rate calculation would have to be based on a reasonable time when viewed in light of the amount recovered.

Although the hourly rate was fixed by the May 10th order approving the fee arrangement, the hours expended in pursuing the claim were not fixed. Thus, under the hourly rate approach, the trial court would have discretion to review the appellant's fee schedules to determine if the hours expended were reasonable under the circumstances. This discretion did not extend to the modification of the fixed percentage fee arrangement on the basis of conservation of the estate or economy of administration.

## CONCLUSION

■ The term "unanticipated developments" in Section 328(a) is subject to a broad interpretation. Under that section, the bankruptcy court has substantial discretion in altering fee agreements when the circumstances warrant. In the instant case, however, the record provides no evidence of any developments that justified alteration of the fee arrangement involved. Conservation of the estate appears to have been the sole reason for altering the agreement. At the time the fee arrangement was approved, it was clear that the estate had limited assets and the Trustee could not have obtained any other attorney to pursue the claim, absent some type of arrangement approved under Section 328(a). Also, there was a likelihood that no recovery would be had on the claim. The only "subsequent development" was the settlement of the claim. The settlement of the claim was clearly anticipated in the May 10th order.

Because the percentage fee arrangement was established and fixed, at the very least the appellant is entitled to that amount ($16,667.67 plus costs of $1,594.42). Since the approved fee arrangement provided for the *greater of* the percentage fee, or, the appellant's normal hourly rate, and the hours expended were not established or fixed, that matter should be subject to the trial court's review as to reasonableness.

Accordingly, the trial court's denial of the motion for reconsideration is REVERSED and REMANDED for a determination as to whether the hours expended by the appellant were reasonable under the circumstances. Once determined, the greater amount should then be paid to the appellant pursuant to the earlier court's approved fee arrangement.