**In re CHURCHFIELD MANAGEMENT & INVESTMENT CORPORATION, Debtor.**

**Bankruptcy No. 84 B 7409.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 24, 1989.

Martin Katz, Fisk and Kart, Ltd., Chicago, Ill., for Fisk & Kart.

Michael L. Molinaro, Katten, Muchin & Zavis, Chicago, Ill., for Trustee.

Dean Harvalis, Chicago, Ill., U.S. Trustee.

## MEMORANDUM OPINION ON APPLICATION FOR FEES AND EXPENSES OF FISK AND KART

JACK B. SCHMETTERER,
Bankruptcy Judge.

### 1. *History of Applicant*

The history of this case was set forth in the opinion of this Court as to fees of various professionals, entered on March 7, 1989, 98 B.R. 838.

Pursuant to order of former Bankruptcy Judge Toles entered November 21, 1984, the Debtor was authorized to employ the firm of Fisk and Kart. Such employment was for the purpose of representing Debtor in proceedings before the Assessor and/or Board of Review in Will County, Illinois, and before the Illinois Property Tax Appeal Board ("Appeal Board"). Such representation was to be with respect to the filing, processing, and prosecuting of petitions, applications, and appeals for the reduction of real estate taxes assessed against Debtor's property in Will County, Illinois. The order provided that Fisk and Kart (F & K) was to be retained on a contingency basis equal to (1) 50% of the tax savings realized from further reductions in the assessed valuation by the Assessor and/or Board of Review for the remaining years of the quadrennial period [1983–1986]; (2) 50% of the additional tax savings obtained for 1984 and 1985; (3) 33⅓% of the additional tax savings obtained for 1986; and (4) in further appeals to the Illinois Property Tax Appeal Board a contingent fee of one-third of any additional tax savings and/or refunds pursuant to order of the Board for each of the tax years 1983 through 1986.

### 2. *Applicant's Fee Request*

Applicant seeks $165,174.60 in compensation under its contingency retention. Applicant asserts that certain tax savings were realized by the Debtor due to Applicant's work before the Appeal Board. The

following fees are requested for the tax savings received from such work:

(a) For the 1983 Real Estate Assessment, a tax savings of $132,552.46—Contingency fee of 33⅓% equal to $44,184.15.

(b) For the 1984 Real Estate Assessment, a tax savings of $130,775.75—Contingency fee of 33⅓% equal to $43,591.91.

(c) For the 1985 Real Estate Assessment, a tax savings of $100,737.79—Contingency fee of 33⅓% equal to $33,579.26.

(d) For the 1986 Real Estate Assessment, a tax savings of $131,457.86—Contingency fee of 33⅓%equal to $43,819.28.

Upon receipt by Debtor of the tax refund for 1986, this Court granted an interim payment equal to F & K's requested contingency fee for the 1986 tax savings ($43,819.28). On January 30, 1989, this court allowed a further payment of $70,000.00 to F & K on account of allowances to be made here but before analysis of the instant Application was completed.

This Court held a hearing on the F & K fee request, and heard evidence offered and argument of counsel. This Opinion will stand as Findings of Fact and Conclusions of Law following that hearing.

### 3. *Discussion*

For the 1983 and 1984 tax years, the tax savings asserted by F & K were derived at the time of redemption of the delinquent real estate taxes which had not been paid due to the Chapter 11 proceedings. The tax saving asserted for 1986 was realized by corrected tax bills, and the tax saving asserted for 1986 was realized from actual tax refunds.

The tax savings for which F & K is requesting contingency fees under its present fee application are those achieved by its work before the State Property Tax Appeal Board. While county assessment reductions remain in effect four years for a property, the State Board only has jurisdiction for one tax year at a time.

The Trustee objected to F & K's application as to the fees sought for the 1983 and 1984 tax reductions. It was the Trustee's understanding that the tax savings claimed for 1983 were savings realized from pre-petition work by Applicant. From F & K's supplemental narrative and testimony at its hearing, it has been established to this Court's satisfaction that the Trustee's charge is without merit, and in fact the Trustee withdrew that objection during the hearing.

The Trustee also objected to the fees sought for the 1984 tax reduction. He argued that adequate evidence was not given to show the asserted 1984 tax savings. In light of the remarks of Trustee's counsel at the hearing on this matter, it appears that Trustee's objection may no longer be asserted. If it does, F & K has nonetheless demonstrated sufficient evidence to establish the asserted 1984 tax savings.

During the hearing on F & K's fee application there was also a great deal of debate and testimony concerning the meaning of Judge Toles' retention order as to these professionals. The pertinent part of that order provided:

It further appearing to the Court that terms for retention, compensation and reimbursement of the law firm of Fisk & Kart, Ltd. for work performed for Churchfield ... in further appeals to the Illinois Property Tax Appeal Board a contingent fee of one-third of any *additional tax saving* and/or refund in taxes pursuant to Order of the Property Tax Board *for each of the tax years* 1983 through 1986 are fair and reasonable. (Emphasis supplied.)

Testimony was offered regarding the amount of F & K time devoted to achieving reductions for 1984, 1985 and 1986, and whether the F & K filings and evidence necessary to achieve reductions for those years were identical to that provided by it for the 1983 tax year.

In light of the hearing, decision as to proper compensation to F & K for reductions received for the 1984, 1985, and 1986, tax years turns on two issues: First, what was meant by the term "additional" in Judge Toles' order retaining F & K? Second, if "additional" meant tax or assessment reductions obtained each year to a

level below the 1983 County assessment, has the fee basis approved by Judge Toles at that time proven to have been improvident in light of developments not capable of being anticipated at the time of that order?

a. What is the Meaning of "additional"?

■ Mr. Molinaro, attorney for Trustee, made the following comments regarding the meaning of the term "additional":

I submit, your Honor, that for the years 1984 and 1985, there was no additional tax savings; that there was a return to the assessment—the assessed value that existed in the prior year; and therefore, there was no additional savings that benefitted the estate.

Certainly, there were savings, but it was not additional savings as required by the order.

Transcript, October 31, 1988, pp. 105–06. [All references to "Transcript" are to the October 31, 1988 date unless otherwise indicated.]

In response to this Court's inquiry as to whether Mr. Molinaro would have had F & K do no work for 1984, 1985 and 1986, Mr. Molinaro stated the following:

That's not what I'm suggesting, your Honor. I'm suggesting that when contingency fee arrangements like this are entered into, these situations that amount to restorations are taken into account in the contingency fee of one-third.

Transcript, p. 111.

The Trustee made the following further comments:

I don't believe that they should only be paid on an hourly rate. That's not the way they were retained. However, your Honor, when the trustee read this language and as counsel read this language about any additional tax savings, we said to ourselves, "I think they should be paid for '83. Since there was no additional savings, they should not be paid for '84 or '85." They did get some additional tax savings for '86.

Transcript, pp. 113–115.

In response to this Court's question as to why F & K should have done any work to obtain reductions for 1984 and 1985 if they were not to be paid for reductions obtained for those years, Mr. Pelliccioni stated:

Your Honor, because they work on a contingency. Had they received a further reduction, then they would have received a third of that further reduction.

Transcript, p. 116.

The meaning of "additional" in the order is less than clear. In the context of that order and the evidence offered, however, that order is understood to refer to the reduction received each year below the 1983 County assessment, even if the reduction and benefit obtained was identical to that obtained for a previous tax year. Judge Toles' order provided ". . . in *further appeals* to the Illinois Property Tax Appeal Board a contingent fee of one-third of any additional tax saving and/or refund in taxes pursuant to Order to the Property Tax Appeal Board for each of the tax years 1983 through 1986. . . ." (Emphasis supplied.) Since that Board only has jurisdiction for one tax year at a time, the retention order was intended to grant a separate contingent fee for each year a reduction was received from the Board due to the efforts of these attorneys. Indeed, the estate has benefitted from the F & K work each year even though that work covered the same grounds that gave benefit in an earlier year.

b. Have the terms of the contingent retainer proven to have been improvident?

■ This Court has determined that Judge Toles' order meant to provide F & K a one-third contingency fee for each reduction obtained from the Appeals Board notwithstanding the fact that a similar reduction had already been received for an earlier year. However, a Bankruptcy Court still has authority under 11 U.S.C. § 328(a) to allow different compensation. Section 328(a) of the Bankruptcy Code provides the following:

The trustee, . . . with court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may

be on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. *Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.* (Emphasis added.)

The present form of that provision is applicable only to cases filed 90 days after the July 10, 1984 date of amendment to § 328(a). This bankruptcy case was filed before that date. Therefore, the earlier version of the section applies to this case. The earlier version of § 328(a) read "unanticipatable" rather than, "not capable of being anticipated". According to William L. Norton, Jr., *Norton Bank Code Pamphlet*, p. 130 (1988–1989 Ed.),

> The draftsmen's use of the somewhat unusual term "unanticipatable" appears to have been intended to incorporate the notion "not capable of being anticipated" ... which would have clarified the term."

*Citing to*, S 658, 96th Cong., 2d Sess. Therefore the statutory change did not change the meaning of the provision.

F & K obtained the same assessment reductions for the 1984 and 1985 tax years as it obtained for the 1983 tax year. For the 1986 tax year a slightly lower assessed value was obtained and the tax savings were somewhat larger. Transcript, p. 80; F & K's Group Exhibit B.

In light of exact or similar tax and assessment reductions obtained for each successive tax year, Trustee's attorney, Mr. Molinaro, asked the following questions during cross examination of Mr. Katz of F & K:

Q. When you filed the successive complaints in 1984 and then 1985 and again in 1986, did the complaints differ substantially with the complaints filed in the previous year?

A. .... The basic forms were similar in terms of just the—the complaints or the appeals that were filed except that they're —there were different numbers involving the assessed valuations of the property for the subsequent years because of equalization, not only in terms of what was set forth on the Lockport Township Assessor's records, but by the Board of Review, and also—and I believe two years by the request that we had to prepare, again because of the differing assessment levels.

Certainly, the—the property itself and the basic information relative to the type of construction or the type of building improvements that were on the property remained the same; and therefore, for purposes of the individual complaints and appeals, that basic information remained the same. It was with respect to the subsequent data that was filed, the documentary evidence and the responses to the response, to be redundant for a moment, of the county that really differed because of the differing courses of action taken by the county in the various four years.

Q. Now, when you filed the appeals, are the circumstances similar with the appeals as they are with the complaints, meaning that the form of the appeal is a standardized document like the complaint is?

A. Yes....

Q. And is it the same case with the appeals in the subsequent years that the form of the appeal or the substance of the appeal was not significantly different than that in the prior years?

A. Not significantly different....

Transcript, pp. 75–78.

Q. Did the documentary evidence change from year to year significantly?

A. It changed in 1986, but the basic evidence that was submitted prior to the responses of the county did not change vary [sic] greatly in that it—it entailed a—evidence of course, of the sale of property by Daverus to Churchfield....

Transcript, p. 92.

Mr. Katz who did the great majority of work done by F & K, did not keep any time records for the work done for the Debtor

and then the Churchfield estate. To achieve the 1985 tax reduction, Mr. Katz estimated that he spent 40 to 52 hours. To achieve the 1984 tax reduction, he estimated 50 to 62 hours of work. Lastly, to achieve the tax reduction for 1986 he estimated 60 to 72 hours.

In conclusion, Mr. Molinaro made these statements:

I'm suggesting that perhaps at the time this order was entered by Judge Toles, the exact amount of hours perhaps was not in the mind of the partion who addressed the Court and that the Court didn't realize that the compensation we were talking about would amount to perhaps $800 to $1,000 per hour.

Transcript, p. 113.

On the other hand, Mr. Katz testified that his firm was retained by other taxpayers in Will County at the time it was retained by order of this Court. The terms under which it charged those clients were the same as terms contained in Judge Toles' order. Transcript, p. 99. Katz testified that the rates charged those clients applied to each subsequent year "on the theory that it was a different tax year and that the order of the Property Tax Appeal Board was limited to the one year in question and that anything could happen in the subsequent years." Transcript, pp. 99–100.

Mr. Katz testified that the Appeal Board reduced the assessment exactly to the amount requested by Churchfield for 1985. Transcript, p. 97. The attorney for F & K stated in his closing statement, "The fact, Judge, that for the years 1983 and '84 the reductions were the same in those two years impacts on the success of what the prosecution of those appeals were." Transcript, p. 103.

Section 328(a) of Title 11 U.S.C. quoted above must be read together with § 330. Section 330 provides:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a ... professional person employed under section 327 ... of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than a case under this title....

The rate for similar kinds of services in private employment is certainly one element to be considered under § 330, among others. *Vaniman International, Inc. v. Rick Kreindler Associates*, 24 B.R. 207, 208 (E.D.N.Y.1982) citing Senate Committee Report, No. 95–989, 95th Cong. 2d Sess, 40, 1978 U.S.Code Cong. and Admin.News 5787, 5826.

■ In *The Matter of Lytton's*, 832 F.2d 395 (7th Cir.1987), the court held that the order employing the attorney on a contingent basis was subject to later change and possible reduction under § 328(a). The court stated:

[W]e believe that section 328 read in conjunction with section 330 contemplates that an attorney seeking a contingent fee payment still must apply to the bankruptcy court and that the language of section 328 expressly allows setting a rate of payment at the beginning of an attorney's employment that may later be changed.

*Id.* at 400.

In *In re Humbert*, 39 B.R. 643 (N.D.Ohio 1984), trustee's attorney contended that he was entitled to compensation in the amount of $37,301.06 pursuant to a contingent fee contract. The attorney succeeded in recovering a fire loss claim from the debtor's insurer. He argued that it is customary to employ a contingent fee contract in fire loss cases and that such arrangement was, therefore, reasonable under the circumstances. The attorney contended that such contract existed and it was not necessary to reduce that contract to writing when one person served as both trustee and attorney. However, the bankruptcy court found that hourly compensation was proper. The court accepted the testimony that the attorney had spent approximately thirty-six (36)

hours resolving the insurance claim. The bankruptcy court then awarded a premium over the attorney's usual $100 hourly rate, an award that totaled $7,500.00 for the hours spent.

The district court reviewing the award in *Humbert* found that the bankruptcy court's decision did not rest on the existence or nonexistence of a contract. Rather, it was found that the lower court relied on its authority under § 328(a) to allow reasonable compensation different from the terms and conditions of such contract when those terms and conditions prove to have been improvident in light of developments that could not be anticipated at the time they were fixed. The district court agreed that the thirty-six (36) hours of work time required did not warrant award of the full contingent fee under circumstances of that case. The bankruptcy court was found to have discretion under § 328(a) to grant a fee different from that agreed upon.

F & K spent 50 to 72 hours for each year in work as to tax years 1984 to 1986, and it requests a contingent fee of between $33,-000 and $43,000 for each year. Such fees would compensate that firm at rates of from $645 to $871 an hour. As shown in the cases cited above, this Court has the authority and discretion to allow compensation different from that set in Judge Toles' order if the terms and conditions of that order are found to have been improvident in light of developments unanticipatable at the time of entering into the order. Such is now found from the record before the Court.

■ The 50 to 72 hours of work by counsel each year does not warrant the full allowance of a contingent fee at the percentage provided for each tax year under the circumstances presented here. To do so would indeed be "improvident" within the meaning of § 328(a). When the retention order was entered by Judge Toles, he could not know at that time how small would be the effort required of F & K after the initial tax year. Nor could Judge Toles have known at the time of his order that after F & K succeeded for the 1983 tax

year it would have almost no risk of losing as to subsequent tax years, and that F & K would in effect obtain four years of tax savings in four proceedings by virtually repeating in each proceeding the evidence used in the first.

This case should be contrasted with the facts and holding in *In re Confections by Sandra, Inc.*, 83 B.R. 729 (9th Cir. BAP, 1987). There, the Bankruptcy Court that reduced a contingent fee mistakenly applied its views on economy of estate, a concept clearly changed under current law, 11 U.S.C. §§ 328, 330. Moreover, in that case the action to be prosecuted by contingent counsel was "bitterly opposed by the defendant," "certain rulings were appealed," and it "presented a substantial reimbursement risk to counsel." Moreover, without the approved fee arrangement it was doubtful that contingent counsel or any other counsel would have taken the case there, the estate having only limited assets to prosecute litigation. *Id.* at 730–733. The Bankruptcy Court therefore did not make the requisite finding under § 328(a) and the record did not support such a finding.

■ The facts in *Churchfield* are much different. These contingent counsel faced no strong adversary. In fact, after their successful effort for the first tax year, they had an easy task for the subsequent tax years. This estate had substantial assets, and there is no evidence that the bar could not have produced other counsel to handle the tax reduction effort on an hourly or mixed hourly and contingent basis. Most significant, there is no evidence to show that F & K had any significant risk of failure and nonpayment as to any of the years following their success for the year 1983 and much evidence to show they did not. A court in bankruptcy allows retention on a contingent basis to compensate for the risk of nonpayment undertaken by contingent counsel. Where due to unforeseeable events that risk disappears, the court should use its discretion under § 328(a) to reduce the allowance below the original contingent percentage. Otherwise the contingent fee would constitute not an

award to counsel based on risk, but rather a bonanza not earned under § 330 of the Bankruptcy Code.

█ It is clear that a bankruptcy court should not reduce a contingent fee merely because the hourly rate looks high in hindsight, *Confections*, 83 B.R. at 732, but only where the Court is prepared to exercise its "substantial discretion" under § 328(a), *Id.* at 733, and only upon a specific finding of truly "unanticipatable developments." *Id.* at 731. Such developments have been found hereinabove.

█ Therefore this Court will allow only the following amounts to Applicant:

(a) The 1983 reduction: A full contingency fee of 33⅓% will be allowed for this reduction, amounting to $44,184.15.

(b) The 1984 reduction: F & K estimated it devoted from 50 to 62 hours to the work. A premium hourly rate of $300 will be allowed for 62 hours in an attempt to compensate F & K for any hours worked which were overlooked in Mr. Katz's estimate and to give full recognition to the value of its work. Therefore, $18,600 will be allowed.

(c) The 1985 reduction: F & K estimated work of 40 to 52 hours. Again, $300 per hour will be allowed on 52 hours; $15,-600 will be allowed.

(d) The 1986 reduction: F & K estimated work of 60 to 72 hours. F & K was able to obtain an assessment reduced somewhat below the 1983 reduction that it had obtained from the Board. In recognition of that added benefit, its time is appropriately valued at $400/hour for 72 hours worked, a total of $28,800.

### 4. *Conclusion*

F & K is allowed a total of $107,184.15 for work done for the Debtor and the Churchfield estate. F & K has received $113,819.28 on account of this allowance. Therefore, F & K is presently required to return to the Trustee $6,635.13 pursuant to terms of the Third Interim Distribution Order and this ruling. The balance applied for by it is denied for reasons stated above.

By separate order, the Trustee's counsel is required to prepare and present a judgment order in accord with the foregoing ruling. That order will require F & K to repay to Trustee the sum of $6,635.13 within 7 days of the entry thereof. It will be certified to permit immediate appeal. The order will also provide that the amount of fees requested but not allowed are disallowed for reasons stated in this Opinion. Should F & K not repay the required sum within the set period, it will be the Trustee's obligation to initiate collection efforts.