In re Susan L. GILBERTSON, Debtor.

No. 04–37868–SVK.

United States Bankruptcy Court,
E.D. Wisconsin.

March 29, 2006.

Joan M. Boyd, Shawano, WI, for Debtor.

Memorandum Decision on Application for Compensation filed by Counsel for the Trustee

SUSAN V. KELLEY, Bankruptcy Judge.

William A. Rinehart (the "Applicant") filed an application for compensation as attorney for Trustee Douglas Mann (the "Trustee") in this chapter 7 case. The Applicant was appointed to recover an alleged fraudulent transfer of $12,500 to an Appleton attorney (the "Transferee"). Apparently the Debtor paid the Transferee for services rendered to someone else, and the Trustee alleged that the payment rendered the Debtor insolvent and was without fair consideration.

The Trustee's application to employ counsel recites that the Trustee sent a demand letter to the Transferee on February 16, 2005, and received no response. Accordingly, by application dated March 10, 2005, the Trustee sought to hire the Applicant. The Trustee received two proposals in his search for counsel: one from the Applicant who offered his services at a 33% contingency fee, and one from another attorney, who bid a 40% contingency fee. Based on the Applicant's experience in bankruptcy and commercial collections, as well as his lower contingency fee percentage, the Trustee selected the Applicant.

The order authorizing the Trustee to employ the Applicant (which was drafted by the Trustee), states: "Fees for the services authorized herein shall not exceed the lesser of one-third (1/3) contingent fee transfers recovered without advance approval by the court plus expenses." The order also identifies the Transferee as "Lila Robinson" rather than "Nila Robinson" as stated in the application. The court signed the order on March 18, 2005.

On January 25, 2006, the Applicant filed his application for compensation, seeking fees of $3,333.34, representing 33% of the $10,000 he recovered on the claim. From the billing records attached to the application, it appears that the Applicant spent 1.2 hours reviewing the schedules and documentation concerning the transfer. On March 23, 2005, the Applicant drafted and sent a demand letter to the Transferee, which took less than 30 minutes. On March 25, the Applicant had a 12–minute telephone call with a potential attorney for the Transferee and on March 30, the Applicant had two telephone calls with the Transferee herself. That same day, the Applicant sent a letter to the Trustee stating that the correct claim was $10,000, not $12,500. On April 11, 2005, the Applicant received the Transferee's check for $10,000 and transmitted the check to the Trustee. The total time billed for the Applicant's services to recover the transfer was 2.7 hours.

Meanwhile, the Debtor executed a deed in lieu of foreclosure of a vacant lakefront lot to a credit union that held the mortgage. The credit union proceeded to market the lot, and obtained a buyer for $93,900. The credit union was owed only $28,000, and although it had obtained relief from stay, the credit union had not sought to have the property abandoned from the bankruptcy estate. Accordingly, the Trustee was able to realize on the equity in the property for the benefit of the estate. After commissions, closing costs and taxes, the sale of the lot netted the estate over $50,000. Unsecured creditors who filed

claims will be paid in full as a result of the sale of the lot.

■ The Trustee sought approval of his final account, including payment of Applicant's contingency fee, which translates to a rate of $1,235 per hour. Notice was given to creditors and parties in interest, and no objections were filed. The bankruptcy court has discretion in considering trustee's attorneys' fees, and, even in the absence of an objection, has the independent authority and responsibility to examine and approve all fee requests. *In re Wildman,* 72 B.R. 700, 705 (Bankr.N.D.Ill. 1987). Accordingly, the court scheduled a hearing on the Applicant's compensation.

The court assumes[1] that the Applicant was employed pursuant to § 328(a) of the Bankruptcy Code which provides in relevant part:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been im-

provident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328 (2005).

Section 330 of the Bankruptcy Code states that "subject to" § 328, the bankruptcy court may award "reasonable compensation" and reimbursement of "actual, necessary expenses" to a professional employed by the trustee. Some courts interpret the "subject to" language as precluding the court from altering the compensation of a professional employed under § 328(a) based on a "reasonableness review." *Nischwitz v. Airspect Air, Inc. (In re Airspect Air, Inc.),* 288 B.R. 464, 471 (6th Cir. BAP 2003), *reversed on other grounds,* 385 F.3d 915 (6th Cir. 2004). These courts strictly construe the "improvidence" standard of § 328(a). *See Daniels v. Barron (In re Barron),* 325 F.3d 690 (5th Cir.2003). In short, proponents of this position argue that once a court has approved a contingency fee under § 328(a), the court has no discretion to adjust the compensation at the conclusion of the engagement.

Courts in the Seventh Circuit have not gone so far in finding § 328 fee arrangements "bulletproof," and have consistently stated that § 328(a) must be considered with § 330, which authorizes approval of

---

1. Two Circuit Courts of Appeal require specific and unambiguous terms to be spelled out in applications and orders to be "approved" under § 328. The Third Circuit held: "If the order does not expressly and unambiguously state specific terms and conditions . . . that are being approved pursuant to the first sentence of section 328(a), then the terms and conditions are merely those that apply in the absence of specific agreement. That leaves the court free to apply lodestar rates unfettered by the stricture of the second sentence of section 328(a)." *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,* 50 F.3d 253, 261 (3d Cir. 1995). The Ninth Circuit employs an argu-

ably even stricter standard, requiring that "unless a professional's retention application unambiguously specifies that it seeks approval under § 328, it is subject to review under § 330." *Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K Corp.),* 279 F.3d 669, 671 (9th Cir.2002). Based on the ambiguous language in the order approving the Applicant's employment in our case, this court could conclude that the requisite specificity is lacking. However, the application contemplates a straight 33% contingent fee, and for purposes of the analysis, the court will assume that the order is specific enough.

"reasonable compensation." In *In re Lytton's*, 832 F.2d 395, 399 (7th Cir.1987), a creditor appealed, arguing that an attorney's contingency fee arrangement under § 328(a) was a final order, since all that was left for the bankruptcy court was the purely ministerial task of "filling in the blanks." The argument makes sense if compensation under an approved § 328(a) arrangement truly is not subject to reduction by the bankruptcy court. But the court of appeals rejected the argument, stating: "Section 328 read in conjunction with section 330 contemplates that an attorney seeking a contingent fee payment still must apply to the bankruptcy court and that the language of section 328 expressly allows setting a rate of payment at the beginning of an attorney's employment that may later be changed." *Id.* at 400. The cases cited by the *Lytton's* court include *In re General Oil Distributors, Inc.*, 51 B.R. 794, 802–03 (Bankr.E.D.N.Y.1985), in which a professional's fee request was reduced by ten percent for lack of success in litigation.

In *In re Churchfield Management & Investment Corp.*, 98 B.R. 893, 898 (Bankr. N.D.Ill.1989), the bankruptcy court said that the reasonableness factors of § 330 should be applied even when the professional has been employed under § 328. In addition to *Lytton's*, the court cited *In re Humbert*, 39 B.R. 643 (N.D.Ohio 1984), in which a contingent fee that would have resulted in a fee of $37,601 was reduced to $7,500 after the court reviewed the hours spent. *Id.*

*In re Begun*, 162 B.R. 168 (Bankr. N.D.Ill.1993), is another example of a reduction of the amount requested under a compensation arrangement that had been approved under § 328(a). The case involved a real estate broker who failed to disclose a connection with the trustee's law firm, although the connection did not give rise to a conflict of interest or lack of disinterestedness under Bankruptcy Code § 327(a). *Id.* at 171–72. In addition to the disclosure issue, the court found compelling the discrepancy between the amount of the compensation based on the contingent fee and the hours actually spent on the sale by the broker. *Id.* at 180. Among the authorities cited by *Begun*, is *In re American Mortgage & Investment Services*, 158 B.R. 43, 45 (Bankr.D.N.J. 1993), in which the court noted: "The supervision of professional fees is essential to the operation of bankruptcy law, integral to the operation of the bankruptcy system and required by the Bankruptcy Code." The court in *Begun* found the following analysis from *American Mortgage* especially noteworthy:

Notwithstanding the terms of the contractual agreement between the debtor and a professional, the fees to be paid are implicitly subject to alteration if, after the services are rendered, the terms prove to have been inequitable. It is for this very reason that appointed professionals are required to submit detailed applications regarding the dates, precise tasks performed, and the time expended to perform those tasks, before such fees are allowed.

*Id.* at 46. The *Begun* court reduced the broker's compensation by calculating the fee on an hourly basis, calling this recalculation "the appropriate equitable exercise of the Court's discretion in awarding fees under section 330, as tempered by section 328(a). Application of the more conventional lodestar analysis to the facts of this matter is appropriate and contemplated by section 328(a) and Rule 2016." *Begun*, 162 B.R. at 180.

This court agrees with the analysis of *Begun* and *American Mortgage*. If a § 328(a) appointment forecloses a court from reviewing the reasonableness of com-

pensation under § 330, there would be no need to require an applicant to submit detailed fee applications giving the hours worked and services rendered and no point in the "notice and hearing" provisions noted by the Seventh Circuit Court of Appeals in *Lytton's*. However, in this case, the court does not need to reach the issue of whether a "reasonableness review" is appropriate for § 328(a) fee applications, finding that the contingency fee arrangement here has proven improvident in light of the unexpectedly early and easy resolution of this matter.

Here, as in *Churchfield*, the court is faced with a contingency fee that appears improvident in light of the unexpectedly easy task performed by the attorney. The *Churchfield* court stated:

> A court in bankruptcy allows retention on a contingent basis to compensate for the risk of nonpayment undertaken by contingent counsel. Where due to unforeseeable events that risk disappears, the court should use its discretion under § 328(a) to reduce the allowance below the original contingent percentage. Otherwise the contingent fee would constitute not an award to counsel based on risk, but rather a bonanza not earned under § 330 of the Bankruptcy Code.

*Churchfield*, 98 B.R. at 899–900.

By way of contrast, the court in *Churchfield* court cited *In re Confections by Sandra, Inc.*, 83 B.R. 729, 733 (9th Cir. BAP 1987), in which the bankruptcy court erroneously reduced a contingency fee solely on the basis of conservation of the estate for the unsecured creditors. The *Confections* case featured a "bitter" fight and several appeals. Noting that even though the bankruptcy court has "substantial discretion" in altering § 328(a) fee arrangements, and that the term "unanticipated developments" is subject to broad interpretation, the Bankruptcy Appellate Panel

found no evidence in the record to justify the reduction in the fee. *Id.*

Similarly, in *Seiler v. First National Bank of Babbitt (In re Benassi)*, 72 B.R. 44 (D.Minn.1987), the district court reversed the bankruptcy court for reducing a contingency fee without specific findings of unforeseeable and unexpected circumstances. The district court said:

> In the present case, there is no finding of fact by the bankruptcy judge that appellants' representation of debtor in the condemnation action was inadequate, ***that the dispute with the state was resolved at an unexpectedly early moment of the proceedings,*** that the results obtained were disappointing, or that the property escalated in value due to forces outside counsel's control.

*Id.* at 48–49 (emphasis supplied).

In our case, the court finds that the dispute with the Transferee ***was*** resolved at an unexpectedly early moment of the proceedings; it took precisely one letter and two telephone calls to obtain a refund of the Debtor's transfer. Such an early and easy result could not have been foreseen by the Trustee when he applied to employ the Applicant; otherwise the application to employ counsel never would have been approved in the first place.

Proponents of the Applicant's position that contingent fees should not be reduced frequently cite *In re Merry–Go–Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D.Md.2000). In that case, a creditor objected when the trustee's attorney's contingency fee was almost 20 times greater than the fee calculated on a pure hourly basis. After examining the circumstances surrounding the generation of the fee, including the incredible risk endured by the attorneys in novel and hard-fought litigation that settled on the eve of trial and the $2 million they advanced in litigation ex-

penses, the bankruptcy court concluded that the compensation was not improvident under Bankruptcy Code § 328(a). *Id.* at 345. However, given the disparity between the contingent fee and the "lodestar" calculation, the court also reviewed Maryland's Rules of Professional Conduct, finding that if the attorneys' contingent fee would be "unethical to enforce" because of a unique combination of subsequent events, the contingent fee arrangement would have proven to have been improvident and subject to reduction pursuant to § 328(a). *Id.* at 338.

The court in *Merry–Go–Round* reviewed Maryland Rule of Professional Conduct 1.5 governing attorney compensation as well as decisions of the Maryland courts interpreting the Rule. The courts read Rule 1.5 as requiring that "the question of the reasonableness of a contingent fee agreement, or one with contingent features, must be revisited after the fee is quantified or quantifiable and tested by the factors enumerated in Rule 1.5(a)." *Atty. Grievance Comm'n of Maryland v. Pennington*, 355 Md. 61, 74, 733 A.2d 1029 (Md.1999). The factors specified in Rule 1.5(a) are the same "reasonableness" factors of Bankruptcy Code § 330, including the time and labor required to perform the service and the novelty and difficulty of the question involved. Although no published Wisconsin case apparently has examined the issue of an excessive contingent fee, Maryland Rule of Professional Conduct 1.5 is virtually identical to Wisconsin Supreme Court Rule 20:1.5, indicating that a "reasonable-

ness" inquiry would be appropriate here as well. Wis. SCR 20:1.5(a)(1).[2] Unlike in *Merry–Go–Round*, applying the reasonableness factors in the instant case compels the conclusion that the Applicant's fee should be reduced because the fee is not justified by the time and labor expended or the novelty and difficulty of the issue.

▆▆▆▆ Contingency fee arrangements are of special concern to the courts, and are not to be enforced on the same basis as ordinary commercial contracts. *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 373 (4th Cir.1996). Especially in bankruptcy cases, when the Trustee and his attorney serve as a fiduciary for creditors, the results of § 328(a) contingency fee arrangements must be scrutinized, and are not "bulletproof." *See Wildman, supra*, 72 B.R. at 707. Although reducing the professional's contingency fee because the hourly rate looks high in hindsight is clearly not appropriate, when the task proves to be unexpectedly easy and the case settles at an unusually early stage, the contingency fee arrangement becomes "improvident in light of developments not capable of being anticipated," and should be reduced.

▆▆▆▆ In this case, such an early unexpected settlement was obtained, and the compensation should be adjusted accordingly. The Applicant's regular hourly rate is $225 per hour, and he has charged as much as $500 per hour for commercial collection matters. Given the speed with which the Applicant obtained the results in this case, an enhanced hourly rate is ap-

2. At the hearing on approval of the Applicant's compensation, the Trustee pointed out that personal injury attorneys regularly receive contingency fees without scrutiny for reasonableness. On the contrary, contingency fees in personal injury cases are subject to review for excessiveness under the same ethical guidelines. *See In re Swartz*, 141 Ariz. 266, 686 P.2d 1236 (1984) (contingency fee reduced for excessiveness after personal injury attorney achieved unexpectedly early and easy settlement). Some states are considering a proposal to limit contingency fees in personal injury claims that settle early. Douglas Fitzpatrick, *Contingent Fees in Early Settled Claims: Does the System Need Reform*, 40 Ariz. Attorney 31 (June 2004).

propriate. Multiplying the 2.7 hours spent by $700 results in a fee of $1,890, which will be allowed as compensation for the Applicant in this case. A separate order has been entered.