**In re SERGIO, INC., Debtor.**

**Bankruptcy No. 80–00766.**

United States Bankruptcy Court,
D. Hawaii.

April 30, 1984.

Ronald Kotoshirodo, Honolulu, Hawaii, for trustee.

William S. Miller, Honolulu, Hawaii, for creditor.

Robert A. Rowan, Honolulu, Hawaii, for landlord.

## ORDER RE: APPLICATION OF BROKER JON P. HAIG FOR COMPENSATION AND COSTS

JON J. CHINEN, Bankruptcy Judge.

The Application for Allowance of Compensation and Fees filed herein on October 29, 1982, by Jon P. Haig, Realtor, Owner and Principal Broker for Commercial Locations, (hereafter "Applicant"), was duly noticed and brought on for hearing before the undersigned Judge on April 8, 1983. Present at said hearing were Mr. Haig, pro se, Scott R. Nakagawa, Trustee, and Counsel for the Trustee, William S. Miller for Bank of Hawaii. Prior to said hearing, Objections to the Application were filed by the Bank of Hawaii, on December 7, 1982, and by the Debtor on December 14, 1982. After the hearing, a Joinder in Objection to Application for Allowance of Compensation to Jon P. Haig, was filed on April 15, 1983, by Hawaii Leasing, and a Memorandum in Objection was filed by Debtor's counsel on April 26, 1983.

The Court having heard the testimony and argument of Mr. Haig, Mr. Nakagawa, and Mr. Miller, and being fully apprised of the documentation submitted by Applicant in support of his application and the memoranda submitted by Debtor and various creditors in opposition to the application, now enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The instant proceeding commenced with the voluntary filing of Debtor's Chapter 7 Petition on December 18, 1980. On December 29, 1980, Scott Nakagawa was appointed Trustee.

2. The Trustee filed an Application for Authority to Hire a Real Estate Salesman and Brokerage Firm to Sell Real Property on June 10, 1982, requesting permission to hire Applicant for the purposes of selling Debtor's restaurant, the Trattoria, located in Waikiki, "at a commission to be deter-mined by the Court." The Order Authorizing Trustee to Retain Real Estate Broker, signed by the undersigned Judge on June 10, 1982, approved the retention of Applicant to sell the subject property "with the commissioner's fee to be determined by the Court."

3. On May 26, 1982, Applicant and the Trustee executed an "Exclusive Right-To-Sell Income Listing Form" giving Applicant an exclusive listing for the property, but which document contained the trustee's provision that "all terms (were) subject to court approval." The listing provided for a 10% commission to Applicant.

4. As presented by Applicant in his application and argument at the hearing, Applicant proceeded to invest substantial time and effort in marketing the subject property. Applicant corresponded with more than fifty potential purchasers informing them of the opportunity to purchase the property. Approximately 35 parties responding to the letter were furnished an informational package prepared by Applicant. Applicant advertised the property in the Honolulu newspapers and traveled to the mainland to promote the property, contacting approximately twelve prospective purchasers on the mainland. Applicant showed the property approximately 35 times to prospective purchasers and brokers.

5. Applicant stated and the Trustee agreed, the Applicant's efforts to market the property were hampered by the resistance of Mr. Sergio Battistetti, principal of Debtor and a prospective purchaser of the restaurant, who refused to provide an inventory, who required that the showings be scheduled in advance with the bookkeeper, that the showings be between 9 and 10 a.m., and generally failed to cooperate with either Applicant or Trustee in their efforts to market the property.

6. In spite of these difficulties, Applicant was able to present approximately 5 signed Deposit, Receipt, Offer and Acceptances, (hereafter "DROA"), and a few unsigned DROAs to the Trustee for consideration between June and September 1982.

None of these were satisfactory to both the trustee and the landlord, Cinerama Hawaii Hotels, Inc.

7. On August 16, 1982, L.N. Nevels, Jr., Esq., representing Frederick B. Livingston, the subsequent purchaser, submitted by letter an offer to purchase the restaurant, along with a $5000 deposit, directly to the trustee. Mr. Nevels and Mr. Nakagawa proceeded to negotiate the offer from Mr. Livingston over the next few months, consummating the sale and obtaining court approval for the sale to Mr. Livingston on October 8, 1982, for a sales price of $250,000.00.

8. The Trustee stated at the hearing that Mr. Haig assisted him in the negotiations with Mr. Nevels by serving as a "consultant" in the negotiations and providing information on the inventory and obtaining a liquor license for the purchaser. The trustee supported Mr. Haig's efforts both in the negotiations with Mr. Nevels and in his general efforts to market the property, including his continued efforts to solicit alternative offers while intensive negotiations were underway with Mr. Nevels.

9. Objections to Applicant's request for compensation, filed by the Debtor, the Bank of Hawaii, and Hawaii Leasing emphasize that the purchaser was not produced by Mr. Haig, but directly contacted the Landlord who referred him to the Trustee. Thus, it is argued, that since Mr. Haig did not produce this purchaser, the benefit of his efforts to Debtor's estate was questionable. Counsel for Hawaii Leasing argued that Applicant's efforts in assisting the negotiations with the subsequent purchaser were minimal in that the conveyance documentation was prepared by his office and the negotiations were between counsel. Counsel for Hawaii Leasing also contends that the 10% commission is too high for commercial listings in that these listings are usually for a lower percentage than the 6% standard commission for residential properties. In any event, counsel for Hawaii Leasing contends that, where there is no cooperating broker and Applicant did not produce the buyer, a 10% commission is unsupported and even a 5% commission is excessive.

10. Documentation presented in the application and argument presented at the hearing and in memoranda do not dispute that the Applicant invested considerable time and effort in marketing the subject property and the court so finds. There is no evidence however that the buyer was produced directly or indirectly through the efforts of the Applicant.

## CONCLUSIONS OF LAW

1. Although the Trustee signed an "exclusive listing" agreement with Applicant, the Order entered by the Court did not explicitly approve an exclusive listing agreement, but rather merely approved retention of Applicant and reserved the commission for further consideration by the Court. The notation on the listing agreement that it was subject to court approval served to notify Applicant that the court reserved the right to review a request for broker's commission and that an automatic commission of 10% upon the sale of the property would not be approved.

2. Under 11 U.S.C. § 327 the trustee, with the court's approval, may employ "professional persons" such as real estate brokers. By 11 U.S.C. § 328(a) this employment may be "on any reasonable terms and conditions …, including on a retainer, on an hourly basis, or on a contingent fee basis." Under 11 U.S.C. § 330(a), the court, after notice and hearing, may award "reasonable compensation" for necessary services to the estate. Although these sections apply primarily to attorneys, and accountants seeking compensation through the Court from debtor's estate, bankruptcy courts have consistently required supportive documents for requests for commissions by real estate brokers and have applied the standard of "reasonable compensation" to determine the amounts to be awarded. See *In Re Frigitemp Corp.*, 24 B.R. 209 (S.D.N.Y.1982).

3. Having found that Applicant expended considerable time and effort in marketing the property and that he did assist in

the sale to Mr. Livingston even though he did not produce the buyer, the Court finds that Applicant deserves compensation but applying the standard of "reasonable compensation", finds that a 10% commission or $25,000 plus costs, as requested by Applicant is excessive.

4. The Court has reviewed the documentation attached to the application, especially the timesheets submitted as support for the 320 hours Applicant spent regarding this property. Although some items on the timesheet do not require professional expertise,[1] and several items are excessive in length for the activity described,[2] it is obvious that substantial time and effort was involved in this listing. However, the nature of timesheets kept by realtors differ significantly from those kept by accountants and attorneys since the salesmanship aspect of a realtor's work involves time entries which would not otherwise be compensable and which do not facilitate careful court review. Therefore, rather than base the compensation to be awarded Applicant on specific time compensated at a specific rate, both variables to somehow be judicially determined, this Court chooses to follow another route in determining "reasonable compensation."

5. Applicant herein did not produce the buyer. In addition, the Court has not and without further evidence cannot, determine the reasonableness of a 10% commission for the sale of a commercial property in Waikiki at a listed price of $250,000.00. The Court finds however that an award of a 10% commission would be excessive under the instant circumstances.

6. Based on the foregoing, the Court thus finds that payment of 3% commission to Applicant is reasonable under the circumstances presented herein, taking into consideration the risk factor inherent in any listing agreement.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Trustee pay $7,500.00 to Mr. Haig as reasonable

compensation for his services regarding the sale of the Trattoria Restaurant.

---

1. September 11—5 hours for taking inventory September 15—vigil over premises for 10½ hours

September 16—surveillance for 8 hours

2. Phone calls listed for minimum of ½ hour