### In re WILKINSON DISTRIBUTING CO., INC., Debtor.

**Bankruptcy No. 89–00139.**

United States Bankruptcy Court, D. Hawaii.

Oct. 6, 1989.

Susan Tius, Honolulu, Hawaii, for trustee.

Ted Pettit, Honolulu, Hawaii, for Armor All Products Corp., First Brands Corp. and Castrol, Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: AWARD OF PROFESSIONAL FEES TO TRUSTEE AND ORDER

JON J. CHINEN, Bankruptcy Judge.

Wyman W.C. Lai ("Trustee") Trustee of Wilkinson Distributing Co., Inc. ("Debtor"), the above-named Debtor, filed a Motion to (1) Approve Sale of Personal Property Free and Clear of Liens and Encumbrances, (2) Partially Distribute Sales Proceeds to Secured Creditors, and (3) Allow Liquidation Fee to Trustee which was granted, in part, by an Order entered on April 4, 1989. The Court approved the requested sale by the

Trustee of the Estate's assets and the Trustee's partial distribution of the sales proceeds to pay off a lien creditor. The Court heard argument, at a hearing held on May 2, 1989, on the Trustee's request that he be allowed a fee for professional services performed in connection with the sale. Susan Tius, Esq. appeared for the Trustee and Ted N. Pettit, Esq. appeared for Armor All Products Corporation, First Brands Corporation and Castrol, Inc. The Court, having heard the evidence, the representations and argument of counsel, makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On March 7, 1989, the Debtor filed a Voluntary Petition under Chapter 7.

2. The Trustee was appointed on March 8, 1989.

3. The Debtor was in the business of wholesale distribution of automobile and household products.

4. Bank of Hawaii had extended a credit line loan to the Debtor secured by a blanket lien against all of the Debtor's assets.

5. In the week prior to the filing of the Debtor's petition, Bank of Hawaii accelerated the loan and took possession of the Debtor's assets.

6. At the time of the filing of the petition, Bank of Hawaii was owed principal of $530,000.00 and accruing interest at the rate of 3.25% above the Bank's prime rate, together with reimbursement of attorney's fees and costs and collection expenses.

7. The Trustee determined that the highest net value to the Estate would be realized by a sale of the assets as an ongoing business or in a retail liquidation sale.

8. The Court, at the Trustee's request, authorized the Trustee to continue operation of the Debtor's business. *See* Order Authorizing Trustee to Conduct Business and Incur Expenses entered March 13, 1989. The Trustee originally applied, ex parte, for authority to operate for a period of 60 days, but received 14 days, with any extension only after court hearing.

9. The Trustee's experience and knowledge is of wholesale and retail sales businesses and as a licensed real estate agent. Rather than hire a professional to handle sale of the business, or the liquidation of the inventory and equipment, the Trustee moved the Court "to allow liquidation fee to Trustee, nunc pro tunc" on March 15, 1989. The Trustee also moved the Court to authorize continued operation of business and partially distribute sales proceeds to secured creditor on March 15, 1989.

10. Time was of the essence to preserve the highest net value of the Debtor's ongoing business because of accruing operating expenses, including monthly rent of $20,000.00, the interest on Bank of Hawaii's secured debt running 3.25% above the bank's prime rate, together with the bank's incurrence of legal and other expenses, competitor's efforts to take over product lines which were exclusively distributed through the Debtor, and the Debtor's employees continued availability for employment.

11. The Trustee evaluated the marketability and value of the Debtor's substantial assets.

12. The Trustee gathered and presented information for marketing to prospective purchasers of the Debtor's warehouse lease, equipment leases, vehicles, equipment, inventory, together as an ongoing business and as separate sales.

13. The Trustee's sales efforts required professional skills which he had developed as a licensed real estate sales person in the State of Hawaii and from 15 years of experience in the distributor business, the last 13 of which were spent in Hawaii.

14. The Trustee is not requesting payment of any compensation for the 20–day period the business was operated since his only purpose in operating the company was to create the opportunity to obtain a higher price for the assets through a private sale.

15. The Trustee over a period of days, negotiated the terms of a sale to Hawaiian Housewares, Ltd. of the Estate's equipment, leased equipment and inventory.

16. The equipment was sold for $35,000.00, the leased equipment for net $3,000.00 and the inventory for $524,643.99.

17. The inventory price was calculated at 80% of the landed cost of all of the Debtor's inventory, including damaged and aged products which the Trustee determined had not been marketable in the Debtor's ordinary course of business.

18. As additional consideration for the sale, the Trustee obtained agreement of Hawaiian Housewares, Ltd. to pay the Estate's operating expenses from the filing of the petition, except for one month of rent and certain bookkeeping expense.

19. The Trustee further negotiated closing of the sale on the very day of Court approval so that the Bank of Hawaii secured debt could immediately be paid and thereby stop the accrual of interest and incurrence of legal expense being charged by the Bank, as well as to maximize the interest which the Estate will collect on the balance of proceeds.

20. The Trustee produced a ready, willing and able buyer and successfully completed a private sale of the Estate's inventory and equipment.

21. Had the Trustee not undertaken the services required to operate the Debtor's business and to make a private sale of the ongoing company's inventory and equipment, the Estate would have had to engage a professional business broker, realtor, auctioneer, or some combination thereof, to liquidate the Debtor's assets. The attendant fees and costs of alternate methods of sale would exceed the fee requested by the Trustee.

22. To the extent that these Findings of Facts constitute Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

1. The Trustee is permitted to hire attorneys, accountants, appraisers, auctioneers, or other professional persons to assist the Trustee in carrying out the Trustee's duties. 11 U.S.C. § 327(a).

2. The Trustee is allowed to employ himself specifically as his own accountant or attorney and in those capacities to be compensated for these services independent of his compensation under 11 U.S.C. § 326. 11 U.S.C. §§ 328 and 330. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 328–329 (1977) and S.Rep. No. 95–989, 95th Cong., 1st Sess. 39 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. *See also* 2 *Collier on Bankruptcy,* paragraph 328.03 (15th Ed.1988). ("When the trustee is acting as accountant or attorney, ... Section 326 is inapplicable and the standards of compensation are determined solely by the criteria set forth in Section 330.")

3. The Code does not prohibit the Trustee from serving in one of the other professional capacities enumerated in 11 U.S.C. § 327(a) and being compensated independently for those professional services.

4. Professionals, including the Trustee, subject to Court approval, are entitled to "reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney ... based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title...." 11 U.S.C. § 330(a)(1). *In re Sergio, Inc.,* 39 B.R. 522, 524 (Bankr.D. Haw.1984); *In re Clapp,* 36 B.R. 768, 770 (Bankr.D.Haw.1985).

5. The Trustee may be awarded separate fees when he fulfills a professional role which extends beyond that of a trustee collecting assets, reducing the Estate's property to money and disbursing and turning over the money of the Estate. 11 U.S.C. §§ 326(a) and 704.

6. If the Trustee, acting as a business broker, had not closed a sale of the assets of the business, he would not be entitled to a sales commission.

7. A business broker, on a sales price of $1,000,000 or less, charges a fee of 8%–10% of the sales price for selling an ongoing business which, for services of this nature, is reasonable and commensurate with the compensation customarily charged in the area of the State of Hawaii.

8. The nature of timesheets kept by real estate sales persons differ significantly from those kept by attorneys because the salesmanship aspect of a real estate sales person's work involves time entries which would not otherwise be compensable. *In re Sergio*, 39 B.R. at 525.

9. The services performed by the Trustee in the instant case are of the nature of kind performed by professionals. This Court would have granted an application by the trustee to employ a broker or other professional person to assist in selling the debtor's property. There is no reason that the Trustee should not be permitted to perform such services, provided that he is qualified to perform the services, and the fee charged is commensurate with his qualifications and comparable to that charged in the open marketplace.

10. The Court is not unmindful, however, that every dollar awarded to the Trustee as a broker's commission will be at the expense of the unsecured creditors. Thus, the Court must strike a balance between the "reasonable compensation" due to the Trustee and the amount to be shared by the other creditors of the estate.

11. There is no "magic formula" that the Court can apply to readily determine how to strike that balance. On one hand, the Court has to be mindful that it does not discourage other qualified individuals from becoming a Trustee or otherwise handling bankruptcy matters. In addition, it must not encourage the Trustee to take the "easy way" out by disposing of the debtor's assets in the fastest and most convenient way, rather than seeking the highest return for the estate in a reasonable period of time. On the other hand, the Court must not overcompensate the Trustee at the expense of the other creditors.

12. In the *Matter of Womack, Inc.,* 1 B.R. 95, 98 (Bankr.Nevada 1979), the court set forth some guidelines for determining a reasonable sales commission:

The standard for determining this reasonableness consists of a number of factors which include, but are not limited to 1) the commercial reasonableness of the fee, as seen in light of what would be paid in a transaction occurring in the open marketplace, 2) the amount to be found in the Bankrupt's estate from which such a payment can be made, 3) the amount of time and expense put into the project by Claimant, 4) the amount brought into the estate by the sale, 5) the difficulty of finding a buyer for the property, and 6) the amount which might be left to pay off secured and general creditors after this and other administrative expenses are paid.

13. The first factor in the *Womack* case is the commercial reasonableness of the fee, as seen in light of what would be paid in a transaction occurring in the open marketplace. The fee that would be charged in the open marketplace in Hawaii is a minimum 6% commission, and up to 10% for commercial property such as the debtor's property.

14. The next three factors set forth in the *Womack* case should be viewed together in determining the reasonableness of the fee requested. These are a) the amount to be found in the Bankrupt's estate from which such a payment can be made; b) the amount brough into the estate by the sale; c) the amount which might be left to pay off secured and general creditors after this and other administrative expenses are paid.

15. The amount for which the debtor's property was sold was $562,643.99. This amount allowed the substantial claim of Bank of Hawaii to be paid in full. Payment to the Trustee of a broker's fee is an administrative expense of the sale and would come from the sales proceeds. This will, of course, reduce the amount available to the other creditors of the estate.

16. The remaining two factors as set forth in *Womack* should also be viewed in conjunction with each other. These are a) the amount of time and expense put into the project by the Claimant; and b) the difficulty of finding a buyer for the property.

17. Because of the nature of the debtor's property, there is a limited number of interested purchaser's available in the open

market, thereby increasing the difficulty of finding a buyer. Other barriers, including the age and the condition of the inventory, also increased the difficulty of marketing the subject property. The timesheets as supplied by the Trustee indicate that the Trustee operated the business for approximately 20 days in order to sell the business as a going-concern as a whole. The Trustee has stated that he will seek no compensation for operating the business for these 20 days. In addition, he spent at least 14 hours directly negotiating and finalizing the sale of the debtor's assets.

18. Under 11 U.S.C. § 506(c), the Trustee may recover from property that secures an allowed secured claim the costs of disposing of the property. 11 U.S.C. § 506(c) states:

(c) The Trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

See e.g. *In re Soucek*, 50 B.R. 753 (D.C. N.D. Illinois 1985).

19. In this case, the Trustee disposed of the property in such a manner that the claim of Bank of Hawaii was paid in full. The Court takes judicial notice of the fact that sales at forced liquidations or at foreclosures typically bring in substantially less than sales of the whole as a going-concern.

20. Based on the above, the Court finds that the special skills and efforts of the Trustee are compensable under 11 U.S.C. §§ 330 and 506. The Court concludes that the Trustee is entitled to a commission of 5% of the total sales price, for the excellent results obtained herein.

21. To the extent that these Conclusions of Law constitute Findings of Fact, they shall be so deemed.

### ORDER

IT IS HEREBY ORDERED that the Trustee is awarded reasonable fees for his professional services relating to his sale of the inventory and equipment of 5.0% of the gross sales price.

IT IS FURTHER ORDERED that the Trustee is authorized, at this time, to make payment of the foregoing compensation.