In re W. Lawrence CLAPP, whose full name is William Lawrence Clapp, Debtor.

In re I.N.V. CORP., a Hawaii Corporation, Debtor.

In re CC INVESTMENT CO., a Hawaii registered general partnership, Debtor.

Bankruptcy Nos. 82–00451 to 82–00453.

United States Bankruptcy Court, D. Hawaii.

Jan. 24, 1984.

Randall Steverson, Nicholas Dreher, Honolulu, Hawaii, for creditor.

James Wagner, Honolulu, Hawaii, for debtors.

## ORDER RE APPLICATION BY THE REALTY GROUP FOR COMPENSATION

JON J. CHINEN, Bankruptcy Judge.

The Application by the Realty Group for Compensation filed herein on October 18, 1983, and Objections to said application by the Debtors filed on November 30, 1983, and by the Bank of Hawaii, filed on November 28, 1983, came on for hearing before the undersigned Judge on December 2, 1983. Present at the hearing were Nicholas

C. Dreher, Esq., for The Realty Group, James A. Wagner, Esq., for Debtors, and Randall K. Steverson, for the Bank of Hawaii.

The instant application brought by the Realty Group seeks approval of a brokerage fee of $62,500.00, which represents five percent (5%) of the sales price of $1,250,000.00 for real property sold by the debtor. Under the Deposit, Receipt, Offer and Acceptance (the "DROA") dated November 5, 1982, by and between Industrial Mineral Products, Inc., (hereafter IMI), and Harold H. Ohama as Trustee for the debtor's estate, the real property was sold subject to the approval of this Court. Said DROA was submitted by The Realty Group on behalf of IMI. On January 6, 1983, a hearing was held on the Application to Approve Sale and on February 11, 1983, an Order Approving Sale of Real Properties was entered herein. Said order approved the sale pursuant to said DROA but continued the determination of the amount of brokerage fees to be paid to the Realty Group "until an appropriate motion to approve said fees is heard." $62,000.00 is being held in escrow pending determination of this application.

Being fully apprised of the memoranda submitted by counsel, the record herein, and the argument and testimony presented at the December 2, 1983 hearing on the instant application, the Court enters the following Finding of Facts and Conclusions of Law:

## FINDINGS OF FACT

1. The DROA controlling this sale included the standard clause on the realtor's brokerage fee, with the figure 5% written in. The DROA also included the typed condition, "Conditional acceptance based on letter dated February 17, 1983 attached."

2. The February 17, 1983 letter, introduced into evidence, from the Trustee Harold H. Omaha to Mr. Thomas C. Hajny, principal broker of the Realty Group, indicates that the debtor's acceptance of the DROA was subject to the Court's Order Approving the Sale which reserved the mat-

ter of fees until an appropriate motion could be heard.

3. No other conditions were placed on the sale by buyers.

4. In support of the application for the 5% commission, the Realty Group presented voluminous documentation including time records and receipts for miscellaneous expenses. Mr. Hajny testified at the hearing that it was not his usual practice to keep time records, thus the supportive documentation was "reconstructed" from his journal entries and various records that his office staff could locate to support this application. Mr. Hajny indicated that this documentation was of a very general nature, and had not been carefully reviewed by him before its submission to the court.

5. The records submitted included extensive timesheet records which related not to the original sale of the subject property from debtor to IMI, but a subsequent sale of a portion of the property to Walker Moody Construction Company, Ltd., (hereafter Moody), and a warehouse construction and leaseback arrangement between IMI and Moody.

6. Hajny testified that approximately two-thirds (⅔) of the time spent in this total deal was spent on the second sale and leaseback arrangement. Although Hajny insisted that this was to debtor's benefit as well as that of IMI and Moody, he did admit that the sale from debtor to IMI was not conditioned upon arranging the subsequent IMI-Moody transaction.

7. Hajny also testified that, although IMI indicated to him that the purchase of the property from debtor would have been problematic to them without the subsequent sale and leaseback arrangement, it was not "impossible" for them to perform on the DROA for the original purchase.

8. Hajny testified that he waived any commission from IMI on the second sale and leaseback arrangement, relying on the 5% commission from the first sale. He has borrowed $50,000.00 from IMI giving them a secured interest in the commission he

expected to receive from the funds held in escrow.

9. Mr. Hajny also testified that in spite of its long availability on the market, the property in question had generated only one other written offer. In his opinion, this was not an easily marketable property.

10. Review of the records submitted reveals that indeed approximately two-thirds (⅔) of the time accounted for by the Realty Group in its application was spent negotiating the resale and leaseback arrangement. In addition, the documentation supporting costs is almost entirely for expenses incurred for either unrelated or noncompensable expenses related to the subsequent resale arrangement and not the original sale.

## CONCLUSIONS OF LAW

■ The Standard for review which the Court will employ in determining the compensation to be paid to professionals is that of "fair compensation" for work done.

Under 11 U.S.C. § 327 the trustee, with the court's approval, may employ "professional persons" such as real estate brokers. By 11 U.S.C. § 328(a) this employment may be "on any reasonable terms and conditions . . ., including on a retainer, on an hourly basis, or on a contingent fee basis." Under 11 U.S.C. § 330(a), the court, after notice and hearing, may award "reasonable compensation" for necessary services to the estate. Although these sections apply primarily to attorneys, and accountants seeking compensation through the Court from debtor's estate, Bankruptcy Courts have consistently required supportive documents for request for commissions by real estate brokers and have applied the standard of "reasonable compensation" to determine the amounts to be awarded. See *In Re Frigitemp Corp.,* 24 B.R. 209 (U.S.D.C., S.D. N.Y.1982).

■ Applying this standard to the application at hand, and in light of this Court's finding that two-thirds of the time and almost all of the expenses substantiated by broker were in support of the subsequent resale & leaseback, this Court declines to

award $62,500 to applicant as reasonable compensation for services to the estate. This Court does recognize, however, that the efforts of the Realty Group resulted in a sale of the property for $1,250,000.00 and that compensation for this accomplishment should be "reasonable".

Counsel for the bank and the debtor have argued that reasonable compensation under the circumstances would be $6000.00 to $7200.00, based on an hourly rate of $100.00 for the actual time spent. This would constitute a commission of .5% rather than the requested 5%. This Court, in the circumstances presented here does not find .5% to be "reasonable" compensation for the sale of a $1,250,000.00 property. The general unreviewability of the supportive documents precludes the Court from determining the exact time and effort spent, but Hajny himself testified and counsel for both debtor and the Bank generally agreed that about ⅓ of the time spent on both deals was spent on the initial sale. Using this as a yardstick, the Court hereby finds that "reasonable compensation" for the Realty Group in the instant situation is $20,000.00, which constitutes a 2% commission for the sale.

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that $20,000.00 be paid to the Realty Group as commission for sale of the subject property from the amount held in escrow with further distribution being then made as per prior or future order of this Court.