**In re Germaine BEGUN, Debtor.**

**Bankruptcy No. 92 B 12333.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 14, 1993.

Mark P. Naughton, M. Gretchen Silver, Rudnick & Wolfe, Chicago, IL, for trustee.

Philip V. Martino, Rudnick & Wolfe, Chicago, IL, Trustee.

David J. Letvin, Letvin & Stein, Chicago, IL, for Germaine Begun, debtor.

Lawrence Fisher, Linda A. Green, Gardner, Carton & Douglas, Chicago, IL, for Chicago Commercial Realty, Inc.

Dean C. Harvalis, Office of the U.S. Trustee, Chicago, IL, for the U.S. Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the motion of Philip V. Martino, the Chapter 7 Trustee ("the Trustee") for authority to pay Chicago Commercial Realty ("the Broker") a five percent commission on the sale of certain real property from the bankruptcy estate. The debtor, Germaine Begun, ("the Debtor") has filed an objection thereto. The Broker and the Trustee have filed additional papers in support of the motion, and the United States Trustee (the "UST") has filed a response. For the following reasons, the Court grants the motion in part, but sustains the objection in part. Pursuant to 11 U.S.C. § 328(a), the Court allows payment in the amount of $75,000.00 or half of the requested compensation in light of the Broker's failure to timely and fully comply with the requirements of Federal Rule of Bankruptcy Procedure 2014(a) and for other reasons discussed herein.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

The material facts and background of this matter are undisputed. The Debtor originally petitioned for relief under Chapter 11 of the Bankruptcy Code, but the case was converted to Chapter 7 on August 31, 1992. Shortly thereafter, the Trustee was appointed. The Trustee is a practicing attorney and a member of the law firm of Rudnick & Wolfe ("the Law Firm"). The Trustee applied for retention of the Law Firm to serve as additional attorneys to assist him with the legal work of the estate pursuant to 11 U.S.C. § 327(a) and (d). The bankruptcy estate under 11 U.S.C. § 541 included a substantial number of valuable commercial real properties subject to various claims and encumbrances. An orderly liquidation is well underway. It is anticipated that the liquidated assets of the estate will exceed claims properly allowable against it to allow a distribution of unsold estate property and excess cash sale proceeds to be repaid to the Debtor pursuant to the provisions of 11 U.S.C. § 726(a)(6).

On March 29, 1993, the Trustee served an application under section 327 to employ the Broker as the exclusive sales agent for the Debtor's real property commonly known as the Chatham Shopping Center, located at 87th Street and South Cottage Grove, Chicago, Illinois (the "Property"). The Trustee desired to enter into a listing agreement which gave the Broker a period of one year to market the Property. The compensation to the Broker was to be based on a straight commission of five percent of the sale price payable upon closing from which its costs would be absorbed. The initial listing price of the Property was $3,750,000.00. The application recited that the Broker was needed because the secured lender holding the undisputed senior lien and encumbrance against the Property had obtained relief from the automatic stay of 11 U.S.C. § 362(a). That creditor, however, voluntarily agreed to allow the Trustee to market and sell the Property in a prompt fashion. The application further recited that to the Trustee's best knowledge, information and belief, the Broker had no connection with the Trustee, the Debtor, the creditors of the estate or any other party in interest and their respective attorneys. In

addition, the application alleged that the Broker represented no interest adverse to the Trustee, the Debtor or the estate, and that the engagement and employment would be in the best interest of the estate.

Attached to the application was the initial affidavit of Mark Lasman ("Lasman") dated March 24, 1993, furnished pursuant to Federal Rule of Bankruptcy Procedure 2014. The affidavit averred that Lasman was president of the Broker and summarily concluded (like many Rule 2014 affidavits) that to the best of his knowledge, the members and employees of the Broker were "disinterested" persons as that term is defined in 11 U.S.C. § 101(14), and to the best of his knowledge, information and belief, the Broker had no connection with the Debtor, the creditors of the estate, or any other party in interest and their respective attorneys. Lasman's affidavit further concluded that the Broker held no interest adverse to the Trustee, Debtor, or the estate, and that such employment would be in the best interest of the estate. Lasman's initial affidavit did not specifically state that the Broker had no connection with the Trustee or his Law Firm.

At the April, 1993 hearings on the application, the Debtor objected to the application and retention of the Broker largely because the Debtor wanted to invoke a marshalling and sale of other assets of the estate, and thus force the Trustee to sell other estate assets before resorting to the attempted sale of the Property. The Court declined to apply the marshalling doctrine, and entered an order dated April 15, 1993, authorizing the Trustee to retain and employ the Broker as in the best interest of the estate to see if offers on the Property could be obtained through the Broker's efforts.

Subsequently, the Trustee presented a motion to sell the Property pursuant to 11 U.S.C. § 363 based on an offer substantially less than the original listing price. The Debtor filed an objection to that proposed sale. Those contested proceedings on the motion and objection to the sale of the Property were held before the Honorable Eugene R. Wedoff due to a scheduling conflict of the undersigned Judge. Pursuant to an auction by the Trustee, a higher and better price for the Property was obtained from another purchaser. Judge Wedoff overruled the Debtor's objection and entered an order approving the sale of the Property for $3,000,000.00. The sale closed on October 19, 1993. As a result, the Broker claims a five percent commission or $150,000.00. The Trustee is holding in a segregated account, pending resolution of the instant dispute, the claimed commission due the Broker.

Lasman filed an amended affidavit on October 7, 1993, making full and complete disclosure of and confirming the Broker's various previously undisclosed connections with the Trustee's Law Firm. Additionally, Lasman executed a third affidavit dated October 25, 1993, in response to the Court's pointed observation that the Broker's papers did not comply with the requirements of Rule 2016(a)(1) and (a)(2) to show the expenses incurred and the time and services expended by the firm members relating to the engagement. Lasman's third affidavit contains a narrative summary of the various services performed by the Broker in connection with the marketing and sale of the Property, and includes estimates of the time expended by Lasman and two other individual agents of the Broker who performed the work. There are over fifty categories of services rendered ranging from the Broker's preliminary discussions with the Trustee through and including follow-up regarding the closing of the sale of the Property. Lasman's third affidavit is supported by eight group exhibits. These exhibits include: the time expended by the various members of the Broker; a summary of the costs incurred; a copy of the Broker's marketing proposal prepared for the Trustee; the Broker's value analysis; and copies of the sales brochure and information package prepared by the Broker, and various addenda thereto, including environmental reports, preliminary title policies, architectural drawings, and required form purchase agreements.

The Broker's time/cost summary shows that three members of the Broker's firm beginning in December 1992 through October 1993, expended 382 hours at rates of $150.00 and $200.00 per hour. On a lodestar basis, this time spent computes to a dollar

figure of $65,700.00. In addition, the Broker contends that its direct marketing costs totalled $10,000.00 for such expenses as printing, labeling, postage, and advertising. These expenses claimed are not supported by paid invoices or canceled checks. The Broker's summary notes that it incurred $2,100.00 in attorney's fees for defense of its commission, and estimates additional attorney's fees of over $11,000.00. The summary also references a multiplier of two to apply to its lodestar rates to reflect the risk of contingency of its engagement. Thus, on a lodestar basis the Broker breaks down its claim to a commission of $154,647.00 (not including its direct marketing costs of $10,000.00). The Court gave the parties an opportunity for an evidentiary hearing. All parties, however, waived same.

## III. *ARGUMENTS OF THE PARTIES*

### A. *The Debtor's Position*

The Debtor objects to paying the Broker because the Broker's relationship with the Trustee's Law Firm was not properly disclosed to the Court. On or about September 22, 1993, the Debtor, through counsel, learned that the Broker's corporate registered agent is a partner at the Trustee's Law Firm. Thereafter, the Debtor's counsel initiated informal discovery and learned that one of the Trustee's law partners owns a sixteen percent equity interest in the Broker, and a vice president of the Broker is the brother of another partner in the Law Firm. In addition, the Debtor's objection brought to the Court's attention that the Law Firm represented the Broker on various matters including its incorporation and other corporate, trademark, and legal work between 1989 and 1993. Therefore, the Debtor contends that Lasman's initial Rule 2014 affidavit was misleading, false and grossly incomplete, although the Debtor acknowledges that there is no conflict of interest or lack of disinterestedness under the requirements of sections 327(a) and 101(14).

Further, the Debtor argues the lack of full and complete disclosure by Lasman and the Broker for purposes of Rule 2014, whether intentional or negligent, is material and mandates denial of any compensation. The Debt-

or points to Lasman's silence to explain how his initial affidavit varied from his amended and supplemental affidavits. Thus, the Debtor concludes Lasman knew of the relationships between the Broker and the Law Firm, that the initial affidavit was not true when Lasman signed it, and Lasman knew that it was untrue at that point in time. According to the Debtor, the Broker is trying to bootstrap such known falsehoods and omissions into the predicate for the allowance of a $150,000.00 commission for the sale of the Property to an outside bidder who was not procured by the Broker. A windfall would enure to the Broker for obtaining a sale that it did not procure as a result of false documents concerning the Broker's relationship with the Law Firm at the time that the listing agreement was signed. The Debtor states that the Broker should not be permitted to benefit from its own misconduct, and none of the parties' submissions reveal anything that avoids the force of Rule 2014.

Additionally, the Debtor argues that section 328(a) does not provide the vehicle for compensating the Broker on a reduced basis. It allows for altered compensation to retained professional persons on a different basis than that under which they were engaged only if the terms and conditions of employment are improvident in light of developments not capable of being anticipated at the time of the engagement. The Debtor states that all the pertinent facts to the tentatively disclosed connections were well known by Lasman before he spoke with the Trustee and at all times since, hence section 328(a) is inapplicable.

The Debtor notes that the Broker's supplemental papers are at variance on the amount of its out-of-pocket costs. Allegedly, $10,000.00 in costs were incurred in the engagement, in contrast with the sum of $15,000.00 referenced in Lasman's supplemental affidavit. In addition, the Debtor points out that the Broker's retention was approved on April 15, 1993, and that actions taken or work performed by the Broker prior to Court approval of this engagement are not properly compensable from the estate. According to the Debtor, there is no proper basis for the Court to justify allowance on a lodestar basis

or enhanced by any factor. The Debtor maintains that Lasman's testimony before Judge Wedoff showed that the steps taken after the Broker's engagement to market the Property were merely to send out a postcard to four thousand people on a computer list, followed up by an informational packet to forty people who expressed interest, all within a thirty day period. These steps produced approximately eight proposals. Lasman, experienced in bankruptcy sales, did not contact the Debtor, or her attorney, about possible persons and prospects with interest in purchasing the Property. The Broker only showed the Property to five people.

## B. *The Trustee's Position*

The Trustee acknowledges that the relationship between the Broker and his Law Firm should have been disclosed in Lasman's initial affidavit. According to the Trustee's affidavit, he first learned of the connection between the Law Firm and the Broker on September 22, 1993, when he received a pleading sent to the Broker's registered agent, one of his partners at the Law Firm. Upon further investigation, the Trustee avers that he then discovered the Law Firm had performed legal services for the Broker. The Trustee's affidavit also confirmed that another partner owns a sixteen percent equity interest in the Broker, and the brother of another partner is also a shareholder as well as an officer and director of the Broker. Notwithstanding these recent disclosures, the Trustee argues that the Debtor's objection should be overruled and the Broker's commission should be allowed in full.

The Trustee contends that the Broker instituted a "massive" marketing program that accomplished the receipt of a fair offer to buy the Property, contrary to the Debtor's desires. According to Lasman's testimony taken before Judge Wedoff, he notified approximately four thousand prospective buyers that the Property was available; he prepared a sales brochure and distributed same to approximately forty prospects; and he showed the Property to five interested buyers. Despite the admittedly incomplete disclosure by Lasman under Rule 2014, the Broker is disinterested for purposes of sections 327 and 101(14), according to the Trustee, because the Broker was not a creditor, equity security holder, insider, or investment banker of the Debtor. Furthermore, the Broker did not hold an interest materially adverse to the estate because the Broker did not possess or assert any economic interest that would tend to lessen the value of the estate. There is no actual or potential dispute in which the estate is a rival of the Broker, and no pre-disposition that would render the Broker to hold a bias against the estate. The Trustee argues that notwithstanding the failure of the Broker to disclose its connections with the Law Firm, the Broker never had any proscribed connection with the Debtor, her creditors, or the estate. According to the Trustee, the Debtor should not reap a $150,000.00 windfall at the expense of the Broker because it appears that the estate will be solvent by as much as an estimated $500,000.00. Rather, the Broker did exactly the job for which it was retained—to find a buyer for the Property—and thus it should be compensated at the full five percent commission.

## C. *The Broker's Position*

Not surprisingly, the Broker filed a similar response to that of the Trustee. First, the Broker contends the requirements of disinterestedness and lack of representation of an interest adverse to the estate, as defined by sections 101(14) and 327(a), are limited to the professional person's relationship to a debtor and the estate, not to a trustee. The Broker points out that section 327(d) specifically permits a trustee, with court approval, to hire himself as his own attorney and accountant, and thus analogizes that if a trustee can so act within the panoply of fiduciary obligations inherent in such relationships, he could also act as his own real estate broker for the benefit of the estate. Thus, the Broker concludes that if the Trustee could have acted as his own broker, certainly an independent entity like it with some connection to the Trustee can do so as well. The Broker argues that the only statutory provision relating to complete denial of compensation applicable here is section 328(c) which provides for denial of compensation if at any time during the professional person's employment, the professional is not disinterested or represents or holds an interest adverse

to the interest of the estate with respect to the matter on which the professional person is employed. The Broker concedes that all of Lasman's statements in his initial affidavit are true except for the reference to "party in interest." The Broker argues that it is not obvious to a lay reader like Lasman that the term "party in interest" included the Trustee. The Broker states that Lasman is not an attorney, and is unfamiliar with the bankruptcy term "party in interest." The Broker concludes that Lasman was unaware that such term included the Trustee and the Law Firm, and Lasman did not understand that his affidavit concerning the Broker's connections with any "party at interest" was inaccurate. Hence, such failure to make full and adequate disclosure was totally inadvertent.

**D. *The United States Trustee's Position***

The UST filed a response noting that a case trustee can retain professionals who are closely connected to him. Such appointments are discouraged, however, and in many instances simply prohibited to avoid conflicting situations with the estate's interest and self-dealing by the trustee or his agents. The UST contends that this case does not precisely involve proscribed self-dealing by the Trustee or his agents, but is a situation in which the Broker, as the Trustee's agent, is closely connected with the Trustee's Law Firm. Thus, the UST concludes that there could have been a reasonable perception that the Trustee's decision to retain the Broker might have been influenced by his Law Firm partners' financial stake in the Broker. The UST points out that the facts are uncontroverted that the Trustee himself did not become aware of the undisclosed connections until after the sale of the Property had been approved. There is no indication under the facts that the Trustee intentionally hired the Broker to benefit his Law Firm. The UST criticizes the Trustee for not explaining to Lasman that he needed to disclose all connections with the Trustee and his Law Firm in the initial Rule 2014 affidavit, and for not performing an internal conflicts check at his Law Firm given the scope of the engagement and the amount of the potential commission. The Trustee and the Law Firm's requests for compensation are not before the Court, so these points

should be deferred. The UST recommends that the Broker should be compensated for its expenses and its time rendered at a reasonable, but unspecified amount. The UST suggests that the Broker should not be permitted to receive a substantial profit from this engagement.

## IV. APPLICABLE STANDARDS

### A. *11 U.S.C. §§ 330 and 331*

■ Pursuant to Sections 330 and 331 of the Bankruptcy Code, all professionals applying for fees must demonstrate that their services were actual, necessary and reasonable. Real estate brokers, though not specifically named in Rule 2014, have long been held to be professionals who need first be retained and their employment approved pursuant to section 327(a), in order to receive compensation for their services from the estate under sections 330 and 331. *See e.g., In re Frigitemp Corp.,* 24 B.R. 209 (S.D.N.Y. 1982); *In re Jones,* 138 B.R. 289 (Bankr. M.D.Fla.1992). Bankruptcy Rule 2016(a) requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a). The statutory and rule standards and requirements are the same for all professional persons retained under section 327(a), no matter what services they perform.

■ The burden of proof to show entitlement to the fees requested is on the Broker. *In re Pettibone Corp.,* 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.,* 50 B.R. 220, 221 (Bankr.N.D.Ill. 1985). Moreover, fee applications must stand or fall on their own merits. *See In re Wildman,* 72 B.R. 700 (Bankr.N.D.Ill.1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees. *In re Chicago, Lutheran Hospital Asso.,* 89 B.R. 719, 734–735 (Bankr.N.D.Ill. 1988); *In re Wyslak,* 94 B.R. 540, 541

(Bankr.N.D.Ill.1988); *Pettibone*, 74 B.R. at 299–300; *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986).

Several courts have listed various factors to be considered when reviewing fee applications of real estate brokers. *In re Womack, Inc.*, 1 B.R. 95 (Bankr.D.Nev.1979) set forth some of the non-exclusive factors in determining the reasonableness of a broker's fees. The *Womack* factors, which will be applied in the matter at bar are: (1) the reasonableness of the fee, in light of what would have been paid in a transaction occurring in the open marketplace; (2) the amount in the estate from which such a payment can be made; (3) the amount of time and expense put into the sale of the Property by the Broker; (4) the amount brought into the estate by the sale; (5) the difficulty of finding a buyer for the Property; and (6) the amount which might be left to pay off other creditors after the Broker's fees and other administrative expenses are paid. *Id.* at 98.

### B. *Fee Enhancement*

The Broker seeks a double lodestar. In support of this request, the Broker argues that it should receive such enhancement for shouldering the risk of non-payment of its fees and expenses because of the contingency of its commission—no sale would result in no fees, and it must bear its own expenses. Fee enhancements are only justified in cases of exceptional success. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). According to the Supreme Court in *Blum*, the burden of proving that such enhancement is proper is on the Broker. In that case, the court reversed the award of a fifty percent bonus to attorneys, finding that neither complexity nor novelty of the issues was an appropriate basis on which to enhance. Pursuant to *Blum*, those factors are adequately reflected in lodestar rates. In addition, such matters as quality of work and benefits to a number of persons were not weighty considerations. Where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably expects in light of hourly rates charged, and that the results were exceptional, fee enhancement could be

properly allowed. *Id.* at 899, 104 S.Ct. at 1549. In light of *Blum*, a showing of good results obtained is not solely the basis for fee enhancement.

Fee enhancement (in the context of attorneys' fees) was subsequently addressed in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("*Delaware Valley I* ") and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("*Delaware Valley II* "). *Delaware Valley I* left undecided the issue of whether enhancement was proper based on the risk of loss. The *Delaware Valley II* court noted that adjustment to the lodestar for delay in payment is consistent with typical shifting statutes, and also noted that if a fee is not contingent, it is improper to adjust the lodestar just because the case is a risky one as the professional has not assumed the risk of non-payment. *Delaware Valley II* followed the *Blum* approach in order to guide trial courts in determining when enhancement is proper. Significantly, *Delaware Valley II* noted that if a risk enhancement is proper, the enhancement, as a general rule, should not be greater than one-third of the lodestar figure. Considering *Blum*, the *Delaware Valley* cases, and their subsequent progeny, in light of the papers submitted by the Broker, the requisite showing for any multiple of the lodestar figure has not been convincingly made.

### C. *Reimbursement of Expenses*

The Broker bears the burden of establishing that it is entitled to certain expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr.N.D.Ill.1989); *In re Affinito & Son, Inc.*, 63 B.R. 495, 497 (Bankr. W.D.Pa.1986). The Court will not assume any expense is necessary. *See In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr. N.D.Ill.1985). An expense is necessary if it was incurred to accomplish the proper representation of the client. *In re Wildman*, 72 B.R. 700, 731 (Bankr.N.D.Ill.1987).

### D. *Federal Rule of Bankruptcy Procedure 2014*

An employment retention application must reveal *all* connections between the professional the trustee wants to hire and the debtor, the debtor's creditors, and any other party in interest in the estate, including the case trustee and the United States Trustee, as well as any connection that may exist between the professional person and any accountant or attorney for a Debtor, creditor, or other party in interest in the estate. Fed.R.Bankr.P. 2014(a). The purpose of Rule 2014(a) is to ensure that all facts that may be relevant to the determination of professional qualification are before the Court and "to permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment." *In re Granite Sheet Metal Works, Inc.*, 159 B.R. 840, 845 (Bankr.S.D.Ill.1993). The Court has the equitable power and duty to enforce the Bankruptcy Rules. Failure of a professional person to comply with the requirements of either the Code or the Rules can result in a reduction or denial of compensation. The Court views the disclosure requirements of Rule 2014 as continuing and ongoing throughout the employment term. *See In re Diamond Mortgage Corp.*, 135 B.R. 78, 89 (Bankr.N.D.Ill.1990). An applicant's subjective intent or state of mind is really irrelevant. What is material is whether the disclosures made are complete and in accordance with Rule 2014's requirements.

Mere conclusive statements that professionals hold or represent no interest adverse to the estate and are disinterested, are insufficient (if incomplete or inaccurate) for purposes of Rule 2014(a). *In re Azevedo*, 92 B.R. 910, 911 (Bankr.E.D.Cal.1988). Neither the Court nor anyone else has a duty to search the record or beyond it for existence of conflicts of interest of professionals sought to be employed or relationships required to be disclosed by Rule 2014(a). Rather there is definitive, affirmative duty placed on a professional applying for retention to disclose all connections with parties in interest, and to reveal any interest which may be antagonistic or opposite to the interest of the estate. Rule 2014(a) leaves a professional person seeking retention with no discretion to choose what connections are relevant or trivial to a section 327(a) analysis. No matter how trivial a connection appears to the professional seeking employment, it must be disclosed. *In re Envirodyne Industries*, 150 B.R. 1008, 1021 (Bankr.N.D.Ill.1993). Several courts have concluded that the failure to comply with the mandate of such full disclosure merits total forfeiture or denial of fees. *See In re Futuronics Corp.*, 655 F.2d 463 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982) (compensation for special counsel denied for failing to disclose all connections with attorneys for the debtor); *In re EWC, Inc.*, 138 B.R. 276 (Bankr.W.D.Okla.1992) (attorney for debtor was denied compensation and required to disgorge previously received sum for failing to disclose his concurrent representation of the debtor's sole shareholder in a divorce action); *In re Marine Outlet, Inc.*, 135 B.R. 154 (Bankr.M.D.Fla.1991) (special counsel was required to forfeit all compensation for failing to disclose a connection with the debtor's principal); *In re Neidig Corp.*, 113 B.R. 696, 699 (D.Colo.1990) (law firm that had represented corporate debtor's president and sole shareholder in individual capacity had conflict of interest, and was required to disgorge fees it had received); *In re Western Office Partners, Ltd.*, 105 B.R. 631 (Bankr. D.Colo.1989) (fees denied when attorneys for debtor failed to disclose, when employed, significant relationship with third persons who held interest adverse to the estate); *In re Lee Way Holding Co.*, 100 B.R. 950 (Bankr. S.D.Ohio 1989) (attorney for the debtor failed to disclose connections with a pre-petition creditor, warranting disgorgement of fees); *In re Churchfield Management & Invest. Corp.*, 100 B.R. 389 (Bankr.N.D.Ill.1989) (fees of counsel for debtor denied because of failure to disclose representation of the debtor's controlling officer); *see also* 1 R. Ginsberg and R. Martin, *Bankruptcy: Text, Statutes, and Rules* § 4.03[c] at p. 4–51 n. 224 (3d ed. 1992) (collecting cases). In other cases, substantial reductions, rather than denial of all fees, were determined to be the

appropriate remedy for violations of Rule 2014. *See In re Rusty Jones, Inc.*, 134 B.R. 321, 342 (Bankr.N.D.Ill.1991) (sixty percent reduction in requested fees for failing to disclose significant personal and business relationship with the principals of the debtor); *In re Diamond Mortgage Corp.*, 135 B.R. 78 (Bankr.N.D.Ill.1990) (court utilized a sixty percent reduction in requested fees under section 328(c) for failure of attorney to disclose that he was a pre-petition creditor of the estate); *In re Al Gelato Continental Desserts, Inc.*, 99 B.R. 404 (Bankr.N.D.Ill. 1989) (ten percent reduction in requested fees for failure to disclose an interest adverse to the estate). All of these cases, however, involve actual conflicts of interest not immediately disclosed, in which the professional involved was found to either be not disinterested or representing an interest adverse to the estate. These cases are distinguished from the situation at bar where there is no disqualifying lack of disinterestedness or representation of an adverse interest.

Some of the parties cite *In re Grabill Corp.*, 113 B.R. 966 (Bankr.N.D.Ill.1990), *aff'd*, 135 B.R. 835 (N.D.Ill.1991), *aff'd*, 983 F.2d 773 (7th Cir.1993) and *In re Peoples Sav. Corp.*, 114 B.R. 151 (Bankr.N.D.Ill. 1990). These cases, decided by this Judge, are distinguishable because they involved attorneys who were found to have held a disqualifying conflict by virtue of their prior representation of insiders who had pre-petition claims against the debtors. Moreover, in both of those cases orders of retention were not entered under section 327, thus resulting in denial of all fees. In the matter at hand, however, the Broker did receive an order authorizing its retention, but failed to make complete disclosure under Rule 2014(a).

### E. *Section 328(a)*

 Section 328(a) permits the Court to allow compensation different from the compensation provided for in the agreement if the terms of the agreement prove to be "improvident" in light of circumstances that were "not capable of being anticipated" at the time the agreement was approved. 11 U.S.C. § 328(a). The legislative history indicates this subsection is permissive, not mandatory. H.R.Rep. 595, 95th Cong., 2nd Sess. 328–329 (1977), 1978 U.S.Code Cong. & Admin.News pp. 5787, 6284, 6285; *see also In re Confections by Sandra, Inc.*, 83 B.R. 729 (9th Cir. BAP 1987) (unless unanticipated developments occur, the court may not override its own previous order authorizing a specific compensation arrangement.). As one court has noted, "[a]lthough section 328(a) specifically refers to altering professional compensation 'after the conclusion of such employment,' it would be absurd to conclude that [the court] must wait until the conclusion of such the employment, when the court realizes that it has acted improvidently in approving the terms and conditions of such employment." *See In re Allegheny Int'l, Inc.*, 100 B.R. 244, 246 (Bankr.W.D.Pa.1989). The Court finds section 328(a) applicable to cover this situation of subsequently discovered facts learned by the Court and other parties that does not rise to the level of a disqualifying conflict of interest.

### F. *Section 328(c)*

In contrast, where subsequently discovered conflicts under sections 327(a) and 101(14) are revealed, section 328(c) provides:

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).

 Most of the cases previously cited in which a disqualifying conflict was subsequently disclosed or revealed, utilized section 328(c) as the basis for reducing or completely denying compensation. That section, however, is inapplicable and inapposite to the facts of this matter because of the undisputed fact that the Broker, though not making timely and full disclosure under Rule 2014, was not in a conflict of interest relationship under the

two-prong requirements of sections 327(a) and 101(14).

Thus, any fee reduction or denial can only be based on the statutory text of section 328(a). The Court disagrees with the Debtor's conclusion that section 328(a) is inapplicable because Lasman has not denied that at all times he has been aware of the connections between the Broker and the Law Firm. The Court does not so construe section 328(a) to limit its application only to situations where the *applicant* later learns of circumstances that developed which were not capable of being anticipated. The undisclosed connections between the Broker and the Law Firm, even if known by Lasman at the time of the Broker's retention application, were unknown to the Court. It is lack of knowledge by the Court, as well as lack of knowledge by the Debtor, Debtor's counsel, and the other parties in interest, that is important for purposes of focusing on whether section 328(a) may be applicable.

## V. *DISCUSSION*

The principal parties in interest in this matter who have the ultimate economic stakes are the Broker and the Debtor. Both sides make strong and compelling arguments in support of their positions. The Debtor is correct that the deficiencies in the initial Rule 2014 affidavit are serious. The Court finds it incredible that Lasman was not aware of the connections the Broker had with the Law Firm. None of Lasman's affidavits directly deny such knowledge. Such omissions in the initial affidavit are serious and undermine the purpose of Rule 2014. Consequently, substantial reduction in the requested compensation is in order. On the other hand, the Broker has rendered significant services which produced a substantial benefit to the estate, and it should be fairly compensated for its time, effort and expenses incurred. Whether the Court would have approved retention of the Broker at the time of the Trustee's application, had all facts been timely disclosed and the Debtor raised the same objection, is unknown and for purposes of ultimate disposition of this matter immaterial. The Court cannot engage in any revisionist view or second guessing given the progress of the administration of the estate. A trustee or his attorney's relationship with a broker or other professional person is a factor bearing on whether the retention should be approved, and whether the particular compensation proposed is appropriate.

Several courts have reduced real estate brokers' fees as improvident for various reasons under section 328(a). *See In re American Mortgage & Invest. Services*, 158 B.R. 43 (Bankr.D.N.J.1993) (appropriate broker's fee was found to be two percent of sale price which was the equivalent $245.00 per hour for each of the brokerage firm's employees who worked on the sale); *In re Schubert*, 143 B.R. 337, 343 (S.D.N.Y.1992) (reduction of broker's fees affirmed because the broker played a minimal role in obtaining the sale); *In re Concept Clubs, Inc.*, 125 B.R. 634, 637 (Bankr.D.Utah, 1991) (broker's ten percent commission was reduced to a five percent commission citing *Womack*); *In re Sergio, Inc.*, 39 B.R. 522, 525 (Bankr.D.Haw. 1984) (ten percent commission plus costs was excessive; broker was awarded a three percent commission because he did not produce the buyer, but spent 320 hours regarding the sale of the property); *In re Clapp*, 36 B.R. 768, 771 (Bankr.D.Haw.1984) (brokerage fee was reduced from $62,500.00 to $20,000.00 or a two percent commission because two-thirds of the time and almost all expenses substantiated by the broker were for a subsequent resale and leaseback of the property which was not a condition of the sale of the property by the debtor). *American Mortgage* aptly noted that the provisions of section 328(a) make it clear that notwithstanding terms of the contractual agreement, the fees to be paid are implicitly subject to alteration if, after services are rendered, the terms proved to have been inequitable. It is for this very reason that Rule 2016(a) requires *all* appointed professionals, no matter on what basis they are to receive compensation, to submit detailed applications regarding the dates, precise tasks performed, and time expended on those tasks before such fees are allowed. 158 B.R. at 45.

The Court has carefully considered all the undisputed facts and reviewed the submissions in light of the *Womack* fac-

tors and the above standards and authorities. The requested fee is within the range of fees of real estate brokers sought and awarded, and in the absence of any evidence to the contrary, would be a commission paid on a transaction occurring in the open marketplace. The amount of the requested fee is well within the liquidated proceeds of the estate's asset base, and the estate can fully pay the requested fee. The amount of time and expense put into the project by the Broker, however, does not warrant the full amount requested in light of the supplemental papers furnished by the Broker. A $150,-000.00 fee sought for a total of 382 hours of time at billing rates of $200.00 or $150.00 per hour, and enhanced by a factor of two, is excessive especially when over ten percent of the time expended by the Broker was prior to the application for retention being filed, much less the order entered thereon. The expenses claimed have not been adequately documented, and were to have been borne by the Broker in any event, rather than separately reimbursed in addition to a commission. The results are not so outstanding to warrant the application of any multiplier over the lodestar computations. Moreover, the Broker should bear its own attorney's fees and costs incidental to this matter, the genesis of which arises out of the inadequate, incomplete and untimely disclosure of the connections the Broker had with the Law Firm in the initial affidavit submitted. The amount brought into the estate by the sale ($3,000,000.00) was in part due to the Broker's efforts in obtaining the "stalking horse"—the initial bidder on the Property. However, the Broker's efforts did not produce the successful bidder, and the higher sale price obtained was a result of the competitive bidding process. The difficulty in finding a buyer was not addressed by the parties. Finally, an award of substantial compensation is favored because all creditors in this estate are anticipated to be paid in full with any excess to be returned to the Debtor.

The Court finds that the flat five percent commission previously approved is improvident in light of the subsequent facts learned: namely, the undisclosed connections of the Broker with the Law Firm; the limited amount of time and effort expended by the Broker in connection with the engagement; and the sale of the Property via competitive bidding to another bidder not procured by the Broker. Neither the Debtor's approach of denying all requested fees, nor the Broker's approach of allowing all requested fees under the terms of the order approving its retention appears to be the appropriate equitable exercise of the Court's discretion in awarding fees under section 330, as tempered by section 328(a). Application of the more conventional lodestar analysis to the facts of this matter is appropriate and contemplated by section 328(a) and Rule 2016. Accordingly, in the better exercise of the Court's discretion, the Trustee's motion is allowed in part. The Trustee is authorized to disburse and pay the Broker the sum of $75,000.00. The balance of the request for fees is denied and the Debtor's objection is sustained in part.

This matter illustrates the danger of using "boiler plate" Rule 2014 affidavits without careful investigation and complete disclosure. It also illustrates the problem lurking for many professional persons in this era of large firms with many clients, and whose personnel frequently turns over. The logistical steps of performing a thorough check for connections as well as conflicts are burdensome, but required nonetheless under the Bankruptcy Code and Rules. Thus, for professionals seeking large fees, even greater care and caution should be exercised. Failure to do so produced the resultant reduced compensation here.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby finds that the Trustee's motion is granted in part. The Trustee is authorized to disburse and pay the Broker the sum of $75,-000.00. The balance of the request for fees is denied and the objection of the Debtor thereto is sustained in part.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be en-

tered pursuant to Federal Rule of Bankruptcy Procedure 9021.