**In re COMBE FARMS, INC., Debtor.**

**No. 00–00801.**

United States Bankruptcy Court, D. Idaho.

Jan. 3, 2001.

Richard D. Himberger, Boise, Idaho, for debtor.

Gary L. McClendon, Boise, Idaho, Office of the U.S. Trustee.

Ronald D. Schoen, Payette, Idaho, Chapter 12 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

Attorney Richard Himberger ("Applicant") urges the Court to grant his Application for Allowance of Compensation for Attorney for Debtor (Docket No. 110) in this Chapter 12 case. Applicant seeks the Court's approval of attorney fees totaling $25,696.85 for representing Debtor Combe Farms, Inc. from March 31 through October 16, 2000. This is Applicant's first fee application filed in the case.

Notice was given to all interested parties and no objections were filed concerning the Application. The Court conducted two separate hearings on this Application at which Applicant, Chapter 12 Trustee Ronald Schoen, and counsel for the U.S. Trustee appeared. At the first hearing, held on November 11, 2000, the Court posed questions to Applicant concerning details of his representation and fee agreement with Debtor, and various transactions with Debtor and others. Applicant was not prepared to answer some of those questions. Therefore, the Court allowed Applicant to supplement the written record,[1] and continued the hearing until December 22, 2000 to allow Applicant time to research responses to the questions. At the second hearing, after considering comments from Applicant about the details surrounding his work in this case, counsel for the U.S. Trustee expressed reservations concerning allowance of the requested compensation. After hearing Applicant's response to the U.S. Trustee's remarks, the Court took the issues raised by the Application under advisement.

After due consideration of the record and the arguments of the parties, the Court now concludes that Applicant is entitled to some, but not all, the requested fees. This Memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052; 9014.

## Background.

This is Debtor's second Chapter 12 case. Applicant also served as Debtor's attorney in a prior case (No. 99–02327) filed on September 10, 1999. That case was dismissed without confirmation of a plan on January 20, 2000 after it became apparent that Debtor exceeded the statutory debt limitations for eligibility for Chapter 12 relief. Applicant contends that at the time of the dismissal, Debtor owed him $23,869.50 for his services. Applicant represents that Debtor's principals, the Combes, wanted to attempt another reorganization, and they wanted Applicant to again act as the company's attorney. However, the parties realized that because Applicant held a large unsatisfied claim against Debtor, he could not qualify as "disinterested" as mandated by 11 U.S.C. § 327(a) and could not serve as counsel. *See* 11 U.S.C. § 101(14) (defining "disinterested person" as a person that is not a creditor). Applicant also had a more pragmatic concern in that he was worried about not getting paid for the fees already "on the books." Given time, the parties collectively hatched a plan to serve their needs.

First, Combes personally paid Applicant $2,000 to apply to his outstanding bill. Next, Applicant agreed to "write off" about $11,600 from the balance due on that account. Applicant further agreed to release the company from any further liability for the outstanding fees. In return, Combes executed a personal promissory note for that balance, and secured it with a deed of trust on their personal residence.[2] Finally, Combes also gave Applicant $5,000 as a retainer for services he would render

---

1. Affidavits of both Mr. Himberger (Docket No. 123) and of Ms. Anderson, his paralegal (Docket No. 124), were filed with the Court on December 15, 2000, in support of the application.

2. Several references to the note and deed of trust were made in the written record, and in Applicant's arguments to the Court. However, copies of these documents were not introduced into the record, and the Court is left to speculate about the terms of these instruments.

prior to commencement of the second Chapter 12 case.[3]

In this fashion, as the parties designed, the company owed Applicant no fees when the second Chapter 12 case was filed on March 31, 2000. Applicant applied for approval of his employment as Debtor's attorney on April 5, 2000 (Docket No. 5). The Court approved this application by order entered on April 28 (Docket No. 28).

Applicant and his client[4] worked very hard over the next months to overcome strong creditor resistance and, with the help of the Chapter 12 Trustee, were able to obtain confirmation of Debtor's Chapter 12 plan.[5] While the ultimate success of this reorganization hinges on Debtor's ability to make the significant payments promised to creditors over the next several years, Applicant deserves considerable credit for meeting the contentions of the various creditors and for keeping Debtor in business.

■ Applicant filed his fee application on October 30. No objection has been raised by the Chapter 12 Trustee or the U.S. Trustee as to the "reasonableness" of the amount of fees sought in this case. Looking just at the services performed in this case, and the results obtained, the Court concurs the amounts sought by Applicant are appropriate.[6] Unfortunately, other problems have surfaced which renders the decision whether to approve Applicant's requested fees complicated.

## Discussion and Disposition of the Issues.

The Court has identified at least three areas meriting specific attention in making this decision. They are examined separately.

### Section 329(a) and Rule 2016(b) Disclosure.

The first problem presented by the Application is a recurring one in the District, about which this Court has commented on prior occasions, apparently with only limit-

---

3. In fact, Applicant documents services he performed worth $5,982.90 during this gap period, largely negotiating with creditors to secure a reduction in the amount of outstanding debt so Debtor could again petition for Chapter 12 relief. Applicant forgave the balance due on this account over and above the $5,000 prepayment he had received from Combes.

4. For purposes of this discussion, the Court presumes that Applicant represented only the Debtor corporation, although given the facts, this is less than clear.

5. The order confirming Debtor's plan was entered on November 7, 2000 (Docket No. 113).

6. To be accurate, the U.S. Trustee did suggest that the Court should review the reasonableness of Applicant's requested fees in connection with the total amount he has billed and received for his services since the inception of his representation, or in other words, for both Chapter 12 cases. In addition to the $2000 paid to Applicant after dismissal of the prior case referred to above, Question 9 of the Debtor's Statement of Affairs shows Applicant received $4500 during August and September of 1999. All told, and without regard to the work performed and payments made to Applicant during the "gap" between the first and second cases, Applicant billed a total of $49,566.35 and apparently received payments totaling $16,773.09 ($2000 in cash, a $4500 retainer and a note from the Combes for $10,273.09). At first blush, the total of the fees charged by Applicant seems high. Moreover, Applicant did not request Court approval of his fees incurred in the prior case before it was dismissed, so no reasonableness review has been made of the fees charged for that legal work. On the other hand, there is no dispute that Applicant has released the Debtor company from any further liability for his fees incurred during the aborted Chapter 12. After considering the U.S. Trustee's arguments, and while the Court has ample authority to review a Debtor's transactions with its attorneys prior to the filing of the instant petition, see 11 U.S.C. § 329(a) and Fed. R. Bankr.P. 2017, the Court declines to do so in this procedural context. Instead, the Court finds the fees requested by Applicant in the present application are reasonable in amount for the services provided in this case only. The U.S. Trustee or other interested party may move, if they choose, for a review of Debtor's transactions with Applicant occurring prior to the filing of the second Chapter 12 case.

ed remedial impact [7]. While, as a general proposition, the lawyers representing debtors in this District display a high degree of professionalism and skill, and religiously adhere to the procedural requirements of the Code and Rules, the Court has observed one area where compliance remains somewhat lacking.

Section 329(a) requires that any attorney representing a debtor in a bankruptcy case file a disclosure form with the Court detailing several aspects of the attorney's representation and fee agreement with the debtor. Rule 2016(b) implements this provision of the Code. That Rule mandates the written disclosure form be filed within 15 days after commencement of a voluntary case [8]. The message the Court has attempted to impart in the past is that the requirements of these provisions of the Code and Rules are not merely aspirations or goals; timely and strict compliance by counsel is mandatory. No more forceful manner of emphasizing the importance of these rules to attorneys should be needed than to remind them that a failure to timely file an adequate disclosure form alone constitutes a sufficient reason for the Court to reduce, or even completely deny, compensation to the debtor's attorney.[9]

Applicant failed to timely file his disclosure form. While Applicant acknowledged he was aware of the disclosure rules, he explained that an "administrative error" occurred in his office.[10] Though the case was commenced in March, Applicant's disclosure form was not filed until October 3, 2000 (Docket No. 104), just a few days before the last confirmation hearing.

As unpleasant as the task is, this Court is responsible to ensure proper disclosure is made by attorneys representing debtors in bankruptcy cases.[11] Because the integrity of the bankruptcy system is

---

7. *See e.g., In re Jordan,* 00.1 I.B.C.R. 46 (Bankr.D.Idaho 2000); *In re Soderberg,* 99.4 I.B.C.R. 152 (Bankr.D.Idaho 1999); *In re Jay D. Fitch Ins. Agency, Inc.,* 91 I.B.C.R. 20 (Bankr.D.Idaho 1991).

8. Rule 2016(b) also requires that a supplemental disclosure be filed within 15 days after counsel receives any payment or enters into any agreement not previously disclosed. Both the original disclosure form and any supplement must also be served on the U.S. Trustee.

9. *In re Lewis,* 113 F.3d 1040, 1045 (9th Cir. 1997) (recognizing bankruptcy court's discretion to completely deny attorney's fees for failure to comply with rules based on the inherent authority over attorney's compensation). For an example, *see In re Basham,* 208 B.R. 926, 931 (9th Cir. BAP 1997) *aff'd sub nom. In re Byrne,* 152 F.3d 924 (9th Cir.1998), wherein the Bankruptcy Appellate Panel warned that "[t]he disclosure requirements imposed by § 329 are mandatory, not permissive, and an attorney who fails to comply with the disclosure requirements*forfeits any right to receive compensation."* (Emphasis in original). In *Basham,* the B.A.P. affirmed this Court's decision to reduce a debtor's attorney's fees as a sanction for failure to timely file a Rule 2016(b) disclosure form.

10. In part, Applicant explained his failure to timely comply with the disclosure rules was the fault of his legal assistant (his spouse). He represents his assistant was told by the "clerks" of another bankruptcy judge in this District that no Rule 2016(b) statement need be filed by debtor's attorney in a Chapter 12 case. Applicant supplies no further details of this alleged conversation, such as why his secretary would be communicating with other chambers about the case, or the names of the clerks giving out such obviously erroneous advice, and no affidavit from his assistant was offered. It should come as no surprise under these circumstances that the Court finds Applicant's representations incredible and ill-advised. Can it be doubted that it was Applicant's responsibility as the professional, and not that of those he employs, to ensure his compliance with applicable law? Applicant has an extensive practice in this Court and, generally, performs competently. The Court is confident Applicant should have known better than to delay in filing the disclosure form.

11. The Court confesses that it, too, has good reason to be embarrassed with its handling of this case. Though not a statutory condition to approval, the Court should not have granted Debtor's request to employ Applicant without the Rule 2016(b) form on file. Because it did not insist on such, the Court approved Applicant's employment without benefit of relevant facts, as is discussed below.

at stake, it is absolutely essential that the Court not simply "excuse" counsel when compliance falls short of that required by the Code and Rules. No good justification for the delay in filing the disclosure exists in this case and such constitutes one reason the Court will not approve the full amount requested in the Application. In the exercise of the Court's discretion,[12] and in another effort to give substance to the requirements of the rules, the Court concludes Applicant's fee request should be reduced by ten percent as a sanction for the tardy filing of the Rule 2016(b) disclosure form.[13]

### Disclosures under Rule 2014(a).

Another important rule has been breached in this case.

■■■ A debtor's application for approval of the employment of an attorney in a bankruptcy case must state, among other things, "the specific facts showing . . . all of the [attorney's] connections with the debtor, creditors, [and] any other party in interest. . . ." Fed. R. Bankr.P. 2014(a). The Rule also requires the proposed attorney to submit a "verified statement" containing a similar disclosure. *Id.* These requirements allow the Court, in acting on the application, to determine whether the proposed attorney has complied with the statutory condition that he or she be disinterested and hold no adverse interest to the bankruptcy estate. 11 U.S.C. § 327(a). As one commentator explains:

> The purpose of the application for authority to employ a professional is to provide the court (and the United States Trustee) with information necessary to determine whether the professional's employment meets the broad tests of

being in the best interests of the estate and, in the language of Rule 2014, necessary. To that end, *a failure to disclose any fact which may influence the court's decision may result in a later determination that disclosure was inadequate and sanctions should be imposed on the professional . . . .* The better practice is to approach an application under Rule 2014 as a pleading which merits careful preparation and review and to err on the side of over-disclosure.

9 Collier on Bankruptcy, ¶ 2014.03, 2014-5–6 (15th ed.1997) (footnotes omitted; emphasis added). And while this Rule requires only that the debtor and professional disclose "connections" or a possible conflict of interest, another provision of the Code allows the Court to deny compensation to any attorney who does not maintain "disinterestedness" or who holds an adverse interest during the pendency of the bankruptcy case. 11 U.S.C. § 328(c).

■■■ In this case, neither the Debtor's application to employ Applicant, nor Applicant's declaration contained within that application, disclose the fact that Debtor's principals, the Combes, had agreed to personally pay Applicant for the remaining fees from Debtors' prior bankruptcy case, which debt was secured by a lien on their house. In the Court's opinion, this omission runs afoul of the Rule. Applicant's status as a significant creditor of Debtor's stockholders and officers, and his fee arrangement with them, certainly constitutes a "connection" with other "parties in interest" in the bankruptcy case for purposes of disclosure under Rule 2014(a).[14] The existence of this arrange-

12. The bankruptcy courts have discretion to adjust the amount of attorney's fees paid from the estate. *Lewis,* 113 F.3d at 1043; *In re Park–Helena Corp.,* 63 F.3d 877, 880 (9th Cir. 1995).

13. Hopefully, Applicant will take steps to avoid similar future errors. While not the basis for the decision here, the Court observes Applicant never did file a disclosure form in

the prior Chapter 12 case, something which would have jeopardized his right to fees in those proceedings, also.

14. *See Park–Helena,* 63 F.3d at 882 (finding a debtor's receipt of a $150,000 retainer from debtor-corporation's president constituted a "connection" which should have been disclosed in the Rule 2014(a) employment application and verified statement, and justified

ment naturally leads to other questions about the parties' relationships, and was relevant to the Court's determination concerning whether Applicant should be employed by Debtor. For example, it is unclear how the Combes regarded or treated their assumption of the corporation's debt to Applicant. Was the corporation obligated to repay this debt to Combes and were they now creditors of the company? Did Applicant agree to represent the Combes' individual interests in the Chapter 12 case? It is unclear what duties or loyalties Applicant may have assumed to the principals as a result of this fee arrangement. Did Combes consider Applicant to also be acting as their attorney?

The Court cannot conclude on this record that had these important facts been disclosed, it would have found Applicant was not disinterested or that he held or represented an interest adverse to the bankruptcy estate. However, the Court can assume, even in retrospect, that revelation of such facts may have been good cause for further inquiry by the Court, and possibly inquiries by the U.S. Trustee or creditors. As it was, the Court approved Applicant's employment without the benefit of such information.

As it turns out, now that the facts are known, the U.S. Trustee has not challenged Applicant's eligibility to represent the Chapter 12 Debtor. Based upon this record, and the outcome of this case, the Court declines to analyze Applicant's status "after the fact" or to hold that Applicant was not disinterested or held an adverse interest while representing the Debtor. However, the Court's dissatisfaction with Applicant's failure to disclose the information necessary to make such a decision early in the case is another reason Applicant's fees must be reduced in this case. Once again, in the exercise of its discretion,[15] the Court concludes that Applicant's fee request should be reduced by another ten percent on account of this failure to comply with the rules.

## Billing Time Increments

 A final problem with the Application does not amount to a critical matter of law, but certainly presents a practical concern to the Court. The Code requires the Court, in determining the reasonableness of a professional's requested compensation, to consider "the time spent on such services...." 11 U.S.C. § 330(a)(3)(A). In his detailed billing statements submitted to the Court with the Application, Applicant has not allocated the time spent on Debtor's case by use of the usual tenths-of-hours. Instead, his time is billed out in *hundredths,* and in some cases, in *thousandths* of hours. Applicant explains that his computer billing program operates via an electronic "stop watch" allowing Applicant to almost instantly start and stop the billing of time to a particular client task.

The benefits of automation and technology in the legal arena have been profound. Given the new science, lawyers and judges operate differently today than in even the recent past, and hopefully, life in the courts and the results of the judicial process are improved for all concerned. The Court appreciates that, in some instances, using shorter intervals in billing professional time could operate to reduce the charges to a client. An attorney can surely work on a given task for something less than six minutes (i.e., 1/10 of an hour).

The wonders of modern technology and potential benefits to Debtor notwithstanding, and without more proof, the Court is

bankruptcy court's denial of law firm's $75,000 fee application). *See also In re Begun,* 162 B.R. 168, 177 (Bankr.N.D.Ill.1993) ("Rule 2014 leaves a professional person seeking retention with no discretion to choose what connections are relevant or trivial. No matter how trivial a connection appears to the professional ... it must be disclosed.").

**15.** The bankruptcy court has broad discretion in designing appropriate remedies for dealing with violations of Rule 2014. *Park–Helena,* 63 F.3d at 882; *In re Film Ventures International, Inc.,* 75 B.R. 250, 253 (9th Cir. BAP 1987).

reluctant to assume that in the hectic confines of the modern law office, busy professionals can accurately account for their time in intervals of 36 seconds (i.e., 1/100 of an hour), let alone 3.6 seconds (1/1000 of an hour). Of course, most of the individual tasks which in the aggregate compose an attorney's "legal services" have a beginning and an end, and computers can hone the process of measuring the modern attorney's efforts. On the other hand, the thought processes of the judges, parties, and clients who are called upon to review whether counsel's computerized charges are "reasonable" may not be capable of such precision—true at least in the case of this bankruptcy judge. Is it reasonable for counsel to expend, say, .02 of an hour (72 seconds or 1.2 minutes) performing a task? Is it excessive to take .065 of an hour (234 seconds or 3.9 minutes) to complete another legal chore? Should the Court engage in such exacting measurements? Isn't the lodestar approach to determining the reasonableness of fees to a significant degree an art as opposed to strictly science? While these are legitimate and important questions, the Court is not inclined to take up the challenge under the facts of this case.

Certainly, no adjustment will be made to Applicant's fees for billing Debtor in hundredths and thousandths of hours. However, if for no other reason than to spare the Court and the parties the headaches inherent in reviewing such billings for reasonableness, the Court respectfully requests that Applicant, in the future, restrict his billings to tenths of hours.

**Conclusion.**

■ Applicant failed to comply with applicable law in at least two important respects.[16] Applicant failed to disclose his connection with the principals of the Debtor spawned by the creative manner in

which he and the Combes rendered Applicant eligible to represent Debtor in this second Chapter 12 case. This lack of disclosure was compounded by Applicant's failed to timely file a Rule 2016(b) disclosure form. As a result, Applicant's relationships with these parties could not be examined until the end, instead of at the commencement, of this case. This approach defeats the purpose of the disclosure rules.

For these reasons, Applicant's request for total fees in the sum of $25,696.85 will be reduced by twenty percent (20%), or $5,139.37, and approved for payment according to the terms of the confirmed Chapter 12 plan in the total sum of $20,557.48. Expenses will be allowed in the amount requested, $1,905.30. A separate order will be entered.

---

**16.** There may be other disclosure issues in this case. As it did at the hearing, the Court again admonishes Debtor and Applicant, that given the facts as developed, Debtor's statement of affairs (Question No. 9) may not

properly or fully disclose all transactions with, or payments made to, Applicant. Debtor has an absolute duty to file complete and accurate schedules. 11 U.S.C. § 521(1).